KATE HANNAN, complainant-respondent,

*v.*

MARGARET E. WILSON, defendant-appellant.

[Submitted May 27th, 1927. Decided October 26th, 1927.]

Section 45 of the Chancery act (*Comp. Stat. p. 426*) does not operate, in a suit for specific performance by a vendor of real estate against his vendee, to transfer the title of the vendor to the vendee by virtue of the decree to accept and pay for the deed, which the vendee refuses to obey.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Church, whose opinion is reported in *100 N. J. Eq. 463.*

*Mr. William M. Beard,* for the appellant.

*Mr. Earl A. Merrill,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

This is an action under the Declaratory Judgments act of 1924. *P. L. p. 312;* see *McCrory Stores Corp.* v. *Braunstein, 102 N. J. Law 590; 134 Atl. Rep. 752.* The suit originated in the court of chancery, and the main question propounded to the court was, in substance, whether section 45 of the Chancery act of 1902 (*Comp. Stat. p. 426*), making a decree of the court of chancery for the conveyance of land tantamount, in some cases, to the conveyance itself, may, in a case of specific performance of a contract to purchase and pay for land, be invoked by a vendor as transferring his title as against a vendee who declines to take and pay for the tendered deed, even after decree requiring him to do so. Up to this time the statute seems never to have been applied except in favor of a vendee against a vendor, so far as our reported cases show. *Price* v. *Sisson, 13 N. J. Eq. 168; affirmed, 17 N. J. Eq. 475; Fee* v. *Sharkey, 59 N. J. Eq. 284; affirmed, 60 N. J. Eq. 446; White* v. *White, 61 N. J. Eq. 629; Goldstein* v. *Curtis, 65 N. J. Eq. 382; White* v. *Smith, 60 Atl. Rep. 399; Compagnie Universelle* v. *United States Service Corp., 84 N. J. Eq. 604; affirmed, 85 N. J. Eq. 601; McVoy* v. *Baumann, 93 N. J. Eq. 360, 638; Baumann* v. *Naugle, 97 N. J. Eq. 110; Baker* v. *Baker, Ibid. 306.* A glance at the history of the present litigation may be of service. The respondent, Hannan, is the vendor, and had an agreement in writing with the appellant, Wilson, to convey land to her for $750. Deed was tendered and refused on the ground of defective title. Respondent filed a bill to compel Mrs. Wilson to take and pay for the deed, and secured a decree requiring her to do so. On appeal to this court the decree was affirmed. *Hannan* v. *Wilson, 100 N. J. Eq. 528; 135 Atl. Rep. 809.* That decree required complainant to keep her tender good by depositing the deed in escrow, which was done, and required defendant within ten days after notice thereof to pay the balance of the purchase price, which was

not done. This, of course, left the defendant in contempt of the decree, and, we take it, amenable to proceedings in contempt, or by way of sequestration of property under section 46 of the Chancery act. *Comp. Stat. p. 427.* Complainant's counsel did not resort to either remedy, but for some reason, which does not appear in the case, invoked the Declaratory Judgments act, *ubi supra,* and by a new bill propounded two questions to the court of chancery. The second depends on the first, and is not argued on this appeal, and hence we disregard it. The first question was: "When, if at all, did title vest in the defendant, Margaret E. Wilson, under the terms of the statute, being section 45 of the Chancery act. *Comp. Stat. p. 426.*" To this the decree in the present suit replied:

"1. The intent of section 45 of the Chancery act (*1 Comp. Stat. p. 426*), when invoked by a successful complainant in a suit for the specific performance of a contract to convey lands, is to give effect to the decree of the court, irrespective of whether such complainant is vendee or vendor.

"2. The decree in this cause having directed compliance therewith by a time appointed, and complainant having complied, title to the lands agreed to be conveyed vested in the vendee at the time appointed, by force of the statute, notwithstanding the vendor was complainant and the vendee was defendant, and notwithstanding the defendant failed to comply. Compliance with the decree by complainant is a condition precedent, and if complainant shall not comply by the time appointed such non-compliance is a breach of the contract, and the statute may not be invoked; in such case, therefore, the statute will not operate to vest title in the vendee. But if defendant only shall not comply with the decree by the time appointed such failure will not deprive the complainant of the benefit of the decree, and title will, nevertheless, vest in the vendee at the time appointed, by force of the statute."

This brings us to a consideration of the statute itself. It is the crux of the case, for two reasons—first, the inquiry under the Declaratory Judgments act is directed solely to the effect of this statute, quite apart from any general principles of equity; and secondly, because without it, and under such

general principles, there would be no transfer of legal title worked by the decree, which formerly operated only *in personam.* This is distinctly laid down by Professor Pomeroy in his Equity Jurisprudence, where in several places we find it sharply stated that the transfer of the title is solely the creature of statute. See sections 170, 428, 1317; also *21 C. J. 691.* We are liable to lose sight of this distinction by reason of the fact that our statute is a very old one, going back to 1799. *Pat. L. 433 § 47.* It stood unchanged until the Revision of 1877. *R. S. (1821) 499; Elm. Dig. 59.* In 1852 section 6·of a supplement to the Chancery act *(P. L. p. 256)* was couched in somewhat similar terms, and covered in addition the contingency of disability of the party ordered to convey. These two sections stood together until 1877 (see *Nix. Dig. 1868 pp. 112, 117*), when they were consolidated by the revisors *(Rev. 1877 p. 115 § 63),* and in this form the section went into the Chancery act of 1902. This history was traced by Vice-Chancellor Stevenson in *Amparo Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 205.* The language, as it has stood since 1877, is as follows *(Comp. Stat. p. 426 § 45):*

"Where a decree of the court of chancery shall be made *for* a conveyance, release or acquittance of lands or any interest therein, and the party *against whom the said decree shall pass,* shall not comply therewith by the time appointed, then such decree shall be considered and taken, in all courts of *law* and equity, to have the same operation and effect, and be as available as if the conveyance, release or acquittance had been *executed* conformably to such decree, and this notwithstanding any *disability of such party by infancy, lunacy, coverture or otherwise.*"

Certain words in this statute have been italicized by us in order to assist in pointing out what we consider its obvious intent, viz., to transfer title *from,* and not *to,* a "party against whom the decree shall pass;" to vest a suitor with a title on his own prayer and not a defendant with a title against his will and over his resistance.

1. The decree is called a decree "for a conveyance;" language inappropriate to a situation in which the complainant tenders a conveyance and defendant is required to pay for it.

2. The "party against whom the decree shall pass" is the party against whom a decree for a conveyance shall pass, *i. e.,* the party directed to convey.

3. This is corroborated by the words "such party" in the concluding clause, which divests him of the title, notwithstanding legal disability to convey.

4. The statute deals with a refusal to *execute* a deed, not a refusal to accept it.

5. The statute provides that the decree operates as a conveyance *at law* as well as in equity.

No doubt the party declared by the Chancery decree to be entitled to the land may then assert his title in ejectment or in trespass. It has been held in the court of chancery that he has such a legal title as will support an action of partition. *White* v. *Smith, 60 Atl. Rep. 399.* But we are quite unable to see how a contract vendee who has been decreed to accept and pay for a deed and has refused, is entitled to maintain ejectment or any other form of action at law against anyone; and if not at law, he stands, under the statute, no better off in equity.

Another glance at the text of Professor Pomeroy's great work will show that there is no indication of any state statute having the effect claimed by respondent. In section 170, *supra,* he speaks of divesting the title of the *defendant* in favor of the *plaintiff;* a "decree that a conveyance of land should be made *by the defendant to the plaintiff;*" and so on. Similar language will be found in sections 428 and 1317, already cited. The converse proposition, that a complainant's title will be divested on his own application, is nowhere mentioned.

The operation of the statute in partition proceedings is illustrative of the underlying thought of the legislature. Before the statute, a ·judgment or decree in partition created no new title, but merely effected a change of possession. *20 R. C. L. 780; 30 Cyc. 308; King* v. *Wilson, 54 N. J. Eq. 251. Condit* v. *Bigalow, 17 N. J. L. J. 109.* Since the statute, a common form of decree in partition has been that the parties interchangeably execute all conveyances neces-

sary to vest the respective allotted shares in severalty, "and in default thereof, the decree have the same operation and be as available to vest the said allotted premises in the several partis concerned as if said deeds had been executed and delivered conformably to this decree." Thus, each of the parties interested was an actor to whom the undivided interests of the others were transferred by the decree operating under the statute.

The rights and remedies of a vendor in his own successful suit for specific performance against his vendee were pointed out by former Vice-Chancellor Stevenson with his usual lucidity in *Smith* v. *Smith, 84 N. J. Eq. 306, 307.* He intimated that contempt proceedings, except in fraud cases, were probably barred by the constitution; a proposition on which we need not pass at this time. Apart from this, he relied, not on section 45 of the Chancery act, now under examination, but on section 46 (*Comp. Stat. p. 427*) providing for sequestration, *fi. fa., &c.,* and suggested "the establishment of a lien upon the property sold for the amount of the price, and the sale of the property for the satisfaction of such lien." A reading of his opinion will show that he was dealing with a lien, not on any legal estate passing under the statute, but on the purely equitable estate of the vendee which is raised up, not by the decree, but by the contract of sale, and in view of the elementary rule that the seller becomes a trustee of the land, and the purchaser a trustee of the purchase-money. It is well to reiterate at this point that we are not here dealing with equitable maxims, but with the construction of a statute purporting to create a title good at law and in equity. It was the equitable doctrine, and not the statute, that was invoked in the leading case of *Wharton* v. *Stoutenburgh, 35 N. J. Eq. 266; 39 N. J. Eq. 299.* The facts are that Stoutenburgh owned a mining property, and there were negotiations between him and Wharton by parol and correspondence, for a lease of it to Wharton. The matter proceeded to the point of preparing and sending to Wharton the lease in complete form satisfactory to him, but which he never signed, though he had gone into possession of the property. Stoutenburgh

brought a bill for specific performance to require Wharton to execute the lease, and obtained a decree, which was affirmed in this court. *35 N. J. Eq. 266, 279.* Wharton ignored the decree. Being a non-resident, he could not be attached for contempt; and having no property in this state, there was nothing to sequester. Whereupon the complainant obtained a further decree that Wharton was bound by the covenants of the lease as though he had executed it, and should be enjoined from setting up the contrary. Wharton appealed again, and our decision is reported in *39 N. J. Eq. 299, 301.* It does not even suggest section 45 as available under the circumstances. The language of this court, speaking through Mr. Justice Scudder, is as follows:

"The former part of this substituted decree may well be justified by the general maxim that equity looks upon that as done which ought to have been done, which means that equity will treat the subject-matter as to collateral consequences and incidents, in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been. *1 Story Eq. § 64 g. ·* Having ascertained the agreement between the parties exactly as it should have been executed when the defendant refused to obey its decree, the court ordered that though, in fact, it is not done, yet, in effect, and in good conscience it shall be regarded as executed by the parties as it was originally intended. This is the specific relief that it is in the power of the court to give, under the circumstances, and accords with the former decree for the execution of the lease."

It will be observed that in all this there is not a word to indicate that Wharton was seized of a legal estate for years under the decree by virtue of the statute, but his status was determined in reliance on the equitable maxim. To this extent the case may be deemed authority to the contrary of the position taken by the court below in the case now at bar.

Finally and fundamentally, if the statute should be held to have the effect accorded to it by the court below, it would necessarily follow that a vendor, who has endeavored by an action of specific performance to compel his purchaser to ac-

cept and pay for a deed, and has obtained a decree to that effect which the defendant refuses or fails to obey, will find himself divested of his legal title, with nothing to show for it beyond a right to process of sequestration, or possibly proceedings in contempt, or a money judgment, or a vendor's lien to be asserted and foreclosed by a further tedious proceeding in equity; and that he has placed himself in this predicament by his own voluntary act. To us it is inconceivable that such could have been the intent of the legislature and, as already shown, such a notion is absent from any of the reported cases or text books.

The appropriate relief, in addition to remedies provided by section 46, or perhaps as an alternative to them, would be to apply to the court of chancery for a decree declaring the contract void for vendee's default, and freeing complainant from all obligations thereunder.

We conclude that the statute did not operate to vest title in the defendant below; and hence the decree under review, so adjudging, must be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ.  13.