Greffet v. Willman.

GREFFET, *Appellant,* v. WILLMAN.

Division One, February 6, 1893.

1. **Contract For Sale of Land:** CONSTRUCTION. A contract for the sale of land, providing for payment of one fourth cash, of which $500 paid at the time should be a part, the balance on time, and requiring a "complete abstract of title to be furnished to be followed by warranty deed conveying the grantor's title as shown by the

abstract," and "should the title prove defective beyond remedy, then this contract to be void" and the "bonus money" refunded, is not one for the future sale of the land on condition that the vendor should furnish the vendee a satisfactory abstract of title, but is a contract for the present sale of the land at the price therein stated, to be paid and secured in the manner therein provided, when the vendor should deliver a warranty deed conveying good title.

2. ———: ———: SPECIFIC PERFORMANCE. In an action by the vendor to enforce the specific performance of such contract, the question is not whether he complied with the requirements of the vendee's counsel in respect to the abstract, or whether such requirements were waived, or the abstract in and of itself showed an unquestionable title, but whether the title tendered the vendee by the deed of the vendor was such as the vendee ought in equity and good conscience to accept.

3. Administrator's Sale: RESALE: JURISDICTION OF PROBATE COURT. A sale of land under an order of the probate court for the payment of decedent's debts is not consummated by knocking off the land to the highest bidder, report by the administrator that the purchaser was ready to comply with his bid and the terms of sale and approval by the court to that extent and assurance that the sale would be confirmed when completed; and when in such case the purchaser fails to comply with his bid and the terms of sale, the court has jurisdiction to order the resale of the property at any subsequent term until a sale is made, and the purchaser at such sale will acquire the title of the decedent.

4. Will, Construction of: LIFE ESTATE: HEIRS. A will devising land to the testator's daughter with power to dispose of it with the consent of her mother, and after the latter's death, with the consent of her brother, and after the devisee's death to go to "her children or heirs on her own side or paternal line," vests in the daughter a life-estate with power to dispose of the fee with the consent of her mother or brother, and, if not so disposed of, to go, upon the daughter's death, to her children, or, if she had none, to her heirs on her father's side.

5. ———: ———: ———. Upon the death of the daughter the fee simple title would descend to her only surviving child, and upon his death to his heirs.

6. Deed: TITLE. Where the vendee in a contract to convey land is tendered a good title thereto, it can make no difference to him whether the grantor in the deed investing him with such title is the vendor or the latter's wife.

7. **Contract to Convey:** TENDER OF DEED: MISSPELLING NAME: SPECIFIC PERFORMANCE. A defendant in an action for specific performance of a contract to convey land cannot object that his Christian name was misspelled in a deed tendered him by the plaintiff, as the court will see that his name is properly spelled in the deed that he gets.

8. ———: OUTSTANDING DOWER: SPECIFIC PERFORMANCE. Specific performance of a contract to convey a good title will not be decreed where a dower interest is outstanding in a part of the land.

*Appeal from Buchanan Circuit Court.*

REVERSED AND REMANDED.

*Huston & Parrish* for appellant.

(1) By the petition for an order to sell real estate, the order of publication and proof of publication, the probate court obtained jurisdiction of the subject-matter, and of all persons "interested in the estate." General Statutes, 1865, ch. 122, secs. 10, 25, 26, pp. 497-8. (2) This order of sale was a final adjudication of the following facts: *First.* That there were valid debts allowed against the estate. *Second.* That there was no sufficient personal assets. *Third.* That a sale of the real estate described was necessary. An appeal was by statute expressly allowed on such order of sale, "On all orders for the sale of real estate." General Statutes, 1865, sec. 1, p. 514. By failing to appeal from the order of sale all persons interested acquiesced in its propriety and necessity. (3) A court empowered to make judicial sales possesses inherent power in its very constitution by virtue of its duties and as incident to the powers granted, the right to protect itself from imposition and to control its own process. This power extends to setting aside any sale made by its order and ordering a resale when the purchaser refuses to pay his bid and thus obstructs the

process of the court. In such case if the second sale realizes less than the first there is a right to recover the deficiency off the defaulting bidder. Courts of general chancery powers may enforce a sale either by a resale or by attachment. *Montgomery v. Williamson*, 37 Md. 429; *Barker v. Richardson*, 7 Atl. Rep. 639; *King v. Platt*, 37 N. Y. 155; *Hudson v. Cable*, 1 S. E. Rep. 688. There is no contract until the court (the real seller) gives its consent; until that is done it is a mere offer, giving no rights—not even an equity. His rights then are to pay the purchase money and receive a deed. *Gibson v. Widener*, 85 Tenn. 16; 3 Bacon's Abridgment, 50; *Cazael v. Hubbard*, 36 N. Y. 680; *Steiner's Appeal*, 56 Pa. St. 9; *Cobb v. Wood*, 8 Cush. 228; *Johnson v. Johnson*, 40 Ala. 247; *Wanger v. Eldredge*, 33 N. J. Eq. 511; 2 Woerner on Administration, p. 1064. (3) Defendant cannot complain that the title is conveyed by Mrs. Greffet. He gets all the covenants of Greffet, with whom he contracted. (4) Although a party has no title or a bad one when he contracts, if he perfect the title at any time before trial he will be entitled to specific performance. *Isaacs v. Skrainka*, 96 Mo. 517. (5) It is entirely immaterial whether the probate court had power to set aside the mistaken order of approval of the sale or not. The order of approval was necessary in order to complete the contract—make it enforcible against the purchaser, Strong. Then, if he refused to complete his purchase, the court had undoubted authority to have the land resold as his land—at his risk. If loss ensued, he must respond. *Camden v. Mayhugh*, 129 U. S. 73.

*Hall & Pike* for respondent.

(1) Plaintiff did not furnish a complete abstract of title. Requirements one and two were certainly just.

"A will should never be abstracted, but set out at large." 1 American & English Encyclopedia of Law, 47. Neither requirement was fulfilled. The will of Jean Baptiste Roy was in a foreign language, and a certified copy from the probate office was furnished. Translation of Jean's will was not made, and neither was recorded in the office of the recorder of deeds. Revised Statutes, 8899. The translation filed May 6, 1889, was not certified from the proper office. Copy certified from the probate office should have been recorded in the office of the recorder of deeds, and it was not unreasonable to require a translation of this record made for use as provided by Revised Statutes, 1889, sec. 4891. Evidence that the wills were admitted to probate was not shown. Defendant was entitled to be directed to the order of the probate court to that effect. *Smith v. Estes*, 72 Mo. 312. The statement of Judge Wyatt appended to the jurat can have no greater force than a certificate of probate indorsed on the will, which is of no validity unless previously ordered or subsequently confirmed by the court. *Barnard v. Bateman*, 76 Mo. 414. The sixth requirement was not complied with. The title was to. be shown by an abstract. Defendant was not required to search the records, or for information *in pais*. *Chase v. Cheney*, 79 Ill. 268. The abstract should show everything of record and *in pais* which would enable a stranger to pass upon the title. *O'Neill v. Douthitt*, 40 Kan. 689. (2) Plaintiff's contract required him to show a good title, which means a marketable title. 1 American & English Encyclopedia of Law, 46, and cases cited; *Wellman v. Desmukes*, 42 Mo. 101; *Herryford v. Turner*, 67 Mo. 296; *O'Neill v. Douthitt*, 40 Kan. 689; *Linton v. Allen*, 147 Mass. 231; *Walton v. Berry*, 41 Hun, 311; s. c. 23 N. E. Rep. 1115; American & English Encyclopedia of Law, *supra*. (3) As an excuse for not completing the

contract he attempted to show that all other require-
ments were impliedly waived. Defendant's testimony
showed that they were not waived. The court believed
defendant, if there was any conflict in the evidence.
(4) The deed tendered in court does not convey the
land to defendant. If all other questions are resolved
in favor of plaintiff, he would be required to pay for the
land and accept a deed purporting to convey the land
to another person. (5) The plaintiff did not have title
in himself. Specific performance could not have been
compelled by defendant. *Hennessey v. Woolworth*, 128
U. S. 438; *Steiner v. Twickey*, 43 N. W. Rep. 376;
*George v. Conhaim*, 37 N. W. Rep. 791; *Rice v. Bush*,
27 Pac. Rep. 720. "A bill for a specific performance
will not be sustained where the remedy is not mutual,
or where one party only is bound by the agreement."
*Benedict v. Lynch*, 1 Johns. Ch. 370; *Glass v. Rowe*, 103
Mo. 539; Waterman on Specific Performance, sec.
196–200; *German v. Machin*, 6 Paige, 292; *Marble Co.
v. Ripley*, 10 Wall. 359; *Duff v. Hopkins*, 33 Fed. Rep.
608; *Litz v. Goosling*, 19 S. W. Rep. 527; *Warren v.
Castello*, 109 Mo. 338; *Watson v. Coats*, 12 S. E.
Rep. 252; *Luse v. Dietz*, 46 Iowa, 205, and citations.
(6) No authority can be found which permits a party
to maintain a bill for specific performance without his
performing, or offering to perform, every condition on
his part precedent to the obligation of the other party.
103 Mo. 355. (7) The abstract of title did not show
title to all the land in Louis Roy. The devise was an
entailment at common law. *Price v. Taylor*, 28 Pa.
St. 95; *Nightingale v. Bennett*, 15 Pick. 104. When the
will took effect Benjamin McKee was in existence and
took at once the remainder in fee. Revised Statutes,
1845, sec. 5, p. 219. The title of this fourth is in the
heirs of Benjamin McKee. The abstract of title furn-
ished does not show who they are. *Welton v. Berry*,

23 N. E. Rep. 1115. (8) It was only upon the disapproval of the sale that the court was authorized to order a new sale. General Statutes, sec. 34, p. 499; amendment, Revised Statutes, 1889, sec. 167. That could only occur at the term the report of sale was heard and passed upon by the court. (9) Defendant is not required to perform if the title offered is doubtful. 3 Pomeroy's Equity Jurisprudence, sec. 1405; Fry on Specific Performance, sec. 862; *Paulmier v. Howland*, 24 Atl. Rep. 271; 92 Mo. 104; 6 Mo. App. 514; *Cornell v. Andrew*, 15 Cent. Law Jour. 8, and note; *McCrasky v. Ladd*, 28 Pac. Rep. 218.

BRACE, J.—This is an action in the nature of a bill in equity to enforce the specific performance of the following contract:

"Received, St. Joseph, Missouri, March 30, 1889, from Reinhold Willman, five hundred ($500) dollars, part payment for the purchase money for the northeast quarter of the southeast quarter of section number six (6) in township number fifty-seven (57), range number thirty-five, situated in Buchanan county, Missouri, this day sold to him for fifteen thousand ($15,000) dollars, payable as follows: One fourth cash, of which the $500 paid is a part, the balance of said cash to be paid within ten days after delivery to said purchaser of a complete abstract of title to said property, showing good title. The said $500 is deposited with John Donovan, Sr., of St. Joseph, Missouri. The deferred payments are as follows: Three notes for $3,750 each, payable in two, three and four years, respectively; said notes to be secured by a deed of trust carrying a vendor's lien on the property, and to draw interest at the rate of six per cent. per annum, payable annually, and evidenced by interest coupon

notes bearing eight per cent. interest after their maturity. Complete abstract of title to be furnished, to be followed by a warranty deed conveying the title of the grantor, as shown by said abstract. Should the title prove defective beyond remedy, then this contract shall be void and the $500 hereby paid shall be paid to Reinhold Willman; all taxes for 1889 and subsequent years to be paid by purchaser. I will guarantee to pay the costs of getting an abstract to the amount of $12, and in case of a fully and completed sale I will pay Messrs. Richmond, Casey & Company a regular real estate commission at the rate of two and one half per cent. on the entire sale, commission amounting to $375. In case of a failure of a complete sale, I can return said amount of bonus money, five hundred ($500) dollars and pay costs of abstract herein guaranteed and not be charged with further costs or commissions whatsoever.

"JULIUS E. GREFFET."

Upon which said instrument in writing the said defendant then and there indorsed the following, to-wit: "I accept the within bargain.

"REINHOLD WILLMAN."

It appeared from the evidence that within a few days after the contract was made an abstract of the title to the premises was furnished, as contemplated in the contract, to the defendant, and by him submitted to his attorneys, who, on the fourth of April, 1889, returned the abstract to the plaintiff's agent with eight written requirements to be complied with before the title shown by the abstract would be approved by them. Subsequent consultations seem to have followed between the parties and their agents and attorneys, which resulted in the following conclusion reached by the defendant's attorneys, addressed to defendant's agent:

"ST. JOSEPH, MISSOURI, April 26, 1889.
"*Dr. J. Francis Smith:*

"From what Mr. Greffet's agents and attorney have shown us, we think that he can so far comply with our requirements upon Hedenberg's abstract of the 'Roy land' as to show that Louis Roy died seized thereof in fee. They claim to be able to establish the following facts, not appearing on record:

"1. That Louis Roy and Bridget M'Kee were the only descendants of Jean Baptiste Roy and Cecile Roy.

"2. That Bridget had but one child, a son, who was killed at the battle of Shiloh, April the fifth or sixth, 1862, and that said Bridget survived her said son and died before her brother Louis; that she was divorced from M'Kee, who has since died; that she remarried and her second husband is also dead. Under the will of Jean Baptiste, one fourth of this land was devised to Bridget for life, with remainder to the heirs of her body. Upon failure of surviving issue, the one fourth reverted to the heirs of Jean Baptiste, viz., Louis Roy. The facts above indicated should be shown to your satisfaction.

"Title from Louis Roy is made to depend upon the validity of Lincoln's deed as administrator. This must be supported by a valid order of sale. An order was made in the spring of 1874 upon what appears to have been regular proceedings. A sale was made to Strong, reported and confirmed. After a lapse of two or three terms, the court, upon the motion of the administrator, set aside the order of confirmation, and then ordered a resale. No further notice was given the heirs of Louis Roy, and we advise you that the court had no jurisdiction to make the order, and that this want of jurisdiction appears upon the face of the record of the proceeding. The deed from Lincoln being void, the

title remains in the heirs of Louis Roy.    Other require-
ments should be complied with as explained heretofore.''

Upon the faith of this opinion defendant declined
to perform the contract, and when afterwards, on the
eleventh day of June, 1889, the plaintiff tendered him
a warranty deed executed and acknowledged by plain-
tiff and his wife, Rosalie Greffet, purporting to convey
the premises to him in fee simple, he declined to
accept the same.    Whereupon the plaintiff, on the
twenty-first day of June, 1890, instituted this suit.

The title shown by the abstract and tendered by
the deed was the title of plaintiff's wife, Rosalie,
derived in the following manner from Jean Baptiste
Roy, who acquired the land by patent from the United
States, and died testate, seized in fee simple thereof,
and who derived the same by the following provision of
his will, dated August, 1840, and admitted to probate
in Buchanan county, June 27, 1852:

"'I request, and it is my will, that all my personal
and real estate, effects and other things which may
belong to me at the time of my death, after the
payment of my just debts, be partitioned and divided
into four equal shares and portions, two of which for
my said beloved wife, Cecile, one for my son, Louis,
and one for my daughter, Bridget M'Kee, under the
clause and condition that the share and portion of the
said Bridget, my daughter, shall not in any manner
nor under any protext whatever enter into the com-
munity which might exist between my said daughter and
the said M'Kee, and that she shall not in any manner
whatever dispose of such share without the permission,
approval or intervention of her mother, my said beloved
wife, or of my said son Louis, after the death of my
said wife.    It is well understood that during that time
my said daughter shall have the use and usufruct of
such share, which, after her death, shall belong to her

children or heirs on her side or paternal line, but not on that of her said husband, Henry M'Kee. As to the two shares and portions of my said beloved wife, and the share and portion of my said son Louis, they shall be enjoyed and disposed of by them respectively, after my death, as they shall deem it fit and proper, and as property belonging to them in their own right.''

Afterwards the said Cecile Roy, by her will dated March 24, 1885, and admitted to probate in said county, August 7, 1887, devised her two shares in said land to her son the said Louis E. Roy, who thus became seized of the undivided three-fourths thereof in fee simple.

It appeared from the oral evidence on the trial that his sister Bridget M'Kee and her husband both died some time in the fifties, intestate (Mrs. M'Kee about 1855 to '57). That her only child, Benjamin, survived her, and when about fifteen years old enlisted in the army, and, since the battle of Pittsburg Landing in 1862, has never been heard of, and ever since has been reputed dead. About the year 1870, Louis E. Roy died and his estate was administered on in Buchanan county, and in a proper proceeding in the probate court of said county, all his right, title and interest in the real estate was, at the April term 1874 of said court, ordered to be sold for the payment of the debts of the said Louis E. Roy, deceased. In pursuance of such order, the property was offered for sale by the administrator on the eleventh day of July, 1874. James W. Strong became the highest bidder at $21.75 per acre. At the July term of said court, and on the tenth day of August, 1874, the administrator made report of his proceedings under the order of sale to the probate court, and that "the said James W. Strong is ready upon confirmation of this report to pay to me the one-half the amount of his bid and to deliver his two promissory

notes for the two deferred payments; and is ready
and willing in all things to comply with the terms of
his bid and the terms of the sale as hereinbefore
stated." Whereupon the probate court made an order
which does not appear *in haec verba* on the record but
which is referred to in the abstract of title, and in the
subsequent application of the administrator for a resale
which was given in evidence as an order confirming or
approving the sale.

Afterwards on the fifth day of April, 1875, upon
the application by motion of the administrator of said
estate, of which the said Strong was notified, setting
forth that the said Strong had failed and refused
to comply with the condition of said sale by refusing
to make the cash payment or to execute his notes for
the deferred payments required by the terms thereof,
the court set aside its said order of the tenth of August
1874, and ordered a resale of the premises. In pursu-
ance of which last order the administrator, on the tenth
day of June, 1875, after having had the land reappraised
as required by this order, sold the same to the plaintiff
for the sum of $21.75 per acre, of which sale the
administrator afterwards, on the sixth of July 1875,
made report to said court, and the same was thereafter,
on the twelfth of July 1875, confirmed by said court.
And thereafter on the twenty-ninth of July, 1875, upon
full payment of the purchase money, plaintiff received
the administrator's deed for the premises duly executed,
went into possession and since has remained in posses-
sion thereof. Afterwards on the fourteenth of April,
1885, the plaintiff conveyed the premises to one Henry
E. Hannig, who afterwards on the fifteenth of April
1885, conveyed the same to plaintiff's wife, the said
Rosalie Greffet.

The court found for the defendant generally, gave
judgment in his favor for costs, and decreed the return

of the $500 deposited with Donovan. The plaintiff appeals.

I. The contract in question was not a contract for the future sale of the premises to the defendant upon the condition that the plaintiff should furnish the defendant an abstract of the title thereof that should be satisfactory to him; but a contract for the present sale of the land to the defendant at and for the price therein stated, to be paid and secured in the manner therein provided for, when the plaintiff should deliver him a warranty deed conveying to him a good title thereto. It is true, a complete abstract of title was to be furnished, but by whom does not clearly appear; $12 of the cost of which however was to be paid by the plaintiff. And if the title shown by the abstract should prove defective *beyond remedy*, *then and then only* was the contract to be void. This abstract was to be furnished before the defendant was required to make the cash payment. It was promptly furnished, submitted by defendant to his counsel, and in compliance with their requirements the plaintiff made further exhibitions of the condition of said title as shown by the letter of said attorneys of the twenty-sixth of April, 1889.

The question to be determined is not whether the plaintiff complied with the requirements of the defendant's counsel in respect of the abstract, or whether such requirements were waived, or whether the abstract in and of itself showed an unquestionable title; but whether the title which the plaintiff tendered to the defendant by his deed of the eleventh of June, 1889 (which he had before that time exhibited to the defendant as aforesaid, before the twenty-sixth of April, 1889, and which is shown in evidence on the trial of the case), is such a title as that the defendant ought in equity and good conscience to be compelled to accept it. *Isaacs v.*

*Skrainka*, 95 Mo. 518; *Luckett v. Williamson*, 37 Mo. 388.    If upon examination of that title we shall find it defective in any material respect, the action of the lower court ought to be sustained; for the defendant ought not to be compelled to pay or secure the purchase price unless he can thereby secure a good title to the land.

II.    That Louis E. Roy died seized in fee simple of three fourths of the land in question, there is no doubt. The only doubt as to plaintiff's wife having acquired his title thereto is in the suggestion aforesaid of defendant's attorneys, that the administrator, under the order of the probate court, had no power to make a resale upon the failure of Strong to comply with the terms of the sale.    This doubt seems to have arisen from the want of a proper appreciation of the force of the whole record of the probate court in the matter. There never was in fact a consummated sale of the property to Strong which could be confirmed, and no such sale thereof was reported to the court.    What the administrator reported to the court was that he had offered the property for sale in pursuance of the order of sale, that Strong was the highest bidder at the sum of $21.75 and the property had been knocked off to him, and that he was willing to comply with the terms of sale, provided it would meet with the approval of the court.    Thereupon the order of the tenth of August, 1874, was made, which is relied upon to given color to this objection to the title.    The terms of the order do not appear in the record; but whatever the form of the order may have been when the administrator made his report, no sale to Strong had been made.    He reported that none had been consummated, and what he had done in that direction, and the willingness of Strong to complete the sale upon the approval of the court.    The most the court could do in its then

condition was to signify its approval of the proceedings of the administrator so far as he had gone and given assurance of a confirmation of the sale when the terms thereof should be complied with. The jurisdiction of the probate court to execute its own judgment for the sale of the property could not be lost until a sale had actually been consummated under its order, and, after this order was made, Strong, having failed and refused to ·comply with the terms thereof, in other words, refused to take the property at his bid and either pay or secure the purchase money, there can be no doubt of the power of the court to enforce its judgment for the sale of the property for the payment of the debts of the deceased by ordering a sale at any subsequent term until a sale was effected; or that the purchaser at such sale would acquire the title of the intestate. 2 Woerner's American Law of Administration, p. 1064.

III. The next question is, did Louis E. Roy die seized of the one fourth of the land devised to Bridget M'Kee? The attorneys for defendant upon their examination of the title seem to have been satisfied upon the facts that he did, for they say in their letter of the twenty-sixth of April, 1889, "Under the will of Jean Baptiste one fourth of this land was devised to Bridget for life, with remainder to the heirs of her body. Upon failure of surviving issue, the one fourth reverted to the heirs of Jean Baptiste, viz., Louis Roy." But his counsel here are not satisfied of the correctness of this construction of the will, nor are we. The more reasonable construction of the will we think is, that the wife of the testator, the said Bridget M'Kee, was to have a life estate in the land with power to dispose of the fee with the consent of her mother, or, in case of her death, with the consent of her brother, Louis; and if not so disposed of by the said Bridget during her life, then upon her death the fee was to go

to her children, if she had any, and if not, to the heirs of the said Bridget on her father's side. And as when she died she had a child and only one child, the said Benjamin M'Kee, the fee simple title to the one fourth of the land vested in him at the death of his mother. And when the said Benjamin died (say in 1862) the title descended to his only known heir, his uncle, the said Louis E. Roy.

It is suggested, however, that his father may have had relatives living at the time of Benjamin's death who would have been as near of kin to him as the said Louis. This is a bare possibility, but not reasonably probable. The whole of the evidence tends to show that his father, Henry M'Kee, died some time in the fifties, after 1852, without any lineal descendants except the said Benjamin; that he was an *emigre* from Ireland who had been in this country many years; that when he died, so far as it can be shown by reputation in his family, he had neither father nor mother, brother nor sister living. He has now been dead about forty years, and no such relative has yet turned up. The plaintiff has been in possession of the premises for more than fifteen years, and we do not think the defendant had the slightest ground to apprehend any annoyance whatever from any person claiming title to any interest in the land through relatives of Henry M'Kee, deceased.

These are the principal objections to the title. We do not see that they preclude a specific performance of the contract.

IV. The remaining objections to the specific performance of the contract can be disposed of briefly. If the defendant receives a good title to the land it can make no difference to him whether the grantor in the deed which invests him with such a title is the plaintiff or his wife. If his Christian name was spelled wrong

in the deed tendered, the court will take care that he gets a deed in which his name is spelled right. There was no objection made to the admission of the wills in evidence. It was not suggested to the court on the trial below that Louis E. Roy left a widow. But the case was tried as if it was conceded that he did not. If it should turn out upon a rehearing that he did leave a widow who has a dower interest in the land, of course the court could not decree a specific performance with such interest outstanding.

Upon the record before us, we cannot see why the plaintiff should not have the relief he seeks. The judgment will therefore be reversed and the cause remanded for rehearing. All concur.