Thomas A. Kyner v. Florence Lowe Bryant, Appellant.—No. 39266.—187 S. W. (2d) 202.

Division One, April 2, 1945.

Rehearing Denied, May 1, 1945.

*Raymond E. Martin, Cowgill & Popham* and *Sam Mandell* for appellant.

*Charno & Drummond* and *Roy W. Rucker* for respondent.

VAN OSDOL, C.—Appeal from a decree of specific performance of a contract for the sale of real property.

October 25, 1943, defendant (appellant), the owner of 220 acres of land in Jackson County, entered into a written contract to convey the land to plaintiff (respondent) for a consideration of ·$40,000 of which $2000 was paid when the contract was signed, and $38,000 was to be paid "cash on delivery of deed." It was agreed, "The seller shall, within ten . . . days from the date hereof, deliver to the buyer" an abstract of title; "The buyer shall have ten . . . days" thereafter to examine the abstract; "If the seller has a merchantable fee simple title to said property, the seller shall deliver to the buyer at the office of . . . J. C. Nichols Investment Company General Warranty Deed, properly executed and conveying said property . . .; the buyer shall then and there pay the balance, if any, of said cash payment . . ."; if there are objections to the title, the seller shall have any defects in the title corrected "within 30 days from date of delivery of such objections . . ." It was further agreed, "If the seller has kept his part of this contract, and the buyer fails to comply with the contract on his part as herein provided, within five . . . days thereafter, then the money deposited as aforesaid is forfeited by the buyer, and this contract may or may not be operative thereafter, at the option of the seller. Time is of the essence of this contract." It was alleged by defendant that, when the contract was signed, surgery and nervous shock had rendered her mentally incompetent to transact any business and she did not consciously and knowingly agree to sell the land to plaintiff.

It is contended by defendant there was no evidence showing a modification of the contract (as plaintiff had alleged) whereby defendant agreed plaintiff should have the privilege of paying $20,000 of the purchase price from the proceeds of a loan (from a mortgage company) to plaintiff; the evidence shows no tender of performance by plaintiff either under the original contract, or under the alleged modification; and, under the evidence as a whole, plaintiff was not, in good conscience and equity, entitled to a decree. On the other hand, plaintiff contends that defendant did not sustain the burden of proving she did not knowingly assent to the contract of sale; that if it is essential to plaintiff's case to show an agreement that he was to have the privilege of paying $20,000 of the purchase price by the proceeds of a loan, such agreement was established by the evidence; and that plaintiff was excused from making a tender by the repudiation of the contract by defendant. Moreover, plaintiff contends, time was not of the essence of the contract, and the requirements of a tender were fulfilled by the tender which the evidence shows was made at the trial.

The land involved is generally tillable, although seeded in grass; thirty acres, however, are in trees and brush. The land lies in such

proximity to Kansas City as to be suitable for subdividing. Extensive and valuable improvements, consisting of a large modern house, a studio, and appurtenant outbuildings including a garage, had been constructed upon the land; the buildings are of unique and distinctive architecture, and in fairly good condition. Real estate dealers, witnesses for plaintiff, were of the opinion the land, including the improvements, is of value $37,225 to $40,000. A real estate dealer, witness for defendant, was of the opinion the land, including the improvements, is reasonably worth $64,340.

The parties had been negotiating for several months concerning the sale, the negotiations for defendant being conducted by Ray D. Jones of the J. C. Nichols Investment Company to whom defendant had given the exclusive sale listing of her property. In the spring of 1943, plaintiff had offered $40,000 and "a vacant lot" in exchange for the land; this offer was rejected by defendant. And about the month of August, 1943, a contract had been prepared for the sale of the land to plaintiff, purchase price $40,000, pursuant to a tentative verbal agreement, but defendant did not sign the contract.

Defendant, who is about sixty-five years old, had been for some years suffering from a thyroid condition which was toxic at times. She had high blood pressure, and badly infected tonsils, and was also afflicted with an inflammation of a nevus on the left hip which was manifested by a large, darkened, and ugly-looking area, irregular in shape. Defendant was admitted to Menorah Hospital, October 19, 1943. Her doctor thought it necessary that the nevus be removed; this was done surgically, October 21, 1943, by the making of a deep incision, the removal of a large amount of skin and fatty tissue down to the muscle, the insertion of drains, and the closing of the wound by suture. Defendant, according to her physician, was "mentally upset" before and after the operation; she was rather difficult to handle after the operation, "and it was necessary to administer sedatives, opiates, naturally, and she suffered a great deal of pain. The drain stopped draining and the hot applications had to be used, and finally she made an uneventful recovery." While defendant was in great distress, her physician testified he "wouldn't say it affected her mind . . . I don't think (she was) just 100 per cent responsible, because she did things there which I don't think a person that feels normally will do"; he had no difficulty in making her understand his questions, and she answered intelligently. October 25th, defendant's pulse rate was 96, and her temperature was 100-plus degrees; on that and the preceding day she was able to get out of bed and go to the bathroom; and she was "up and about" on November 3d. Four witnesses—defendant's niece, defendant's sister-in-law, a nurse, and a friend—testified defendant was in great pain, weak, nervous and "very ill." Defendant was dismissed "ambulatory" from the hospital November 6th.

It was the testimony of Ray D. Jones that defendant called him by telephone the evening of October 24th, asking him to bring a contract (for the sale of the land to plaintiff) to her the next morning; this he did and, after a discussion about dispossessing the caretakers of the property, defendant signed the contract involved herein and instructed the witness to procure abstracts of title from defendant's apartment at the Chatham Hotel. The witness "didn't notice anything unusual about her and she minimized her illness herself, all the time, in talking with me." The deposition of defendant was introduced by plaintiff. Of the interview with Jones, defendant testified she did not remember talking over the telephone. "I don't remember any telephone. I have a very hazy recollection of Mr. Jones being in that second room. I can't remember what he said, exactly. I do remember he had a paper in his hand and he said, 'Your lawyer has approved, Mrs. Bryant' and I just—as you would under the conditions I was under—I just faded out—as you know if you have ever been under that."

According to the testimony of Jones, defendant (upon being advised by telephone, October 26th, of the completion of the contract by the signature of plaintiff) directed Jones to mail her copy of the contract to the Chatham Hotel, asked him to notify the caretakers of the property of the transaction, and conferred with him concerning the purchase of other land. Thereafter defendant advertised the sale of her furniture, inspected other realty as a prospective purchaser, and is quoted by witnesses as saying she was pleased with the sale of her land. Plaintiff had expressed the intention of obtaining a loan for $20,000 of the purchase money, and defendant, December 3d, busied herself in satisfying the requirements made by the Keystone Mortgage Investment Company, which had undertaken to make a loan to plaintiff. She also admitted plaintiff's employees into possession of the improvements on or about December 13th. However, in late December or early January, defendant told Jones, "You know, I don't think I am going ahead with this deal." Theretofore, the correction of defects of title prior to the consummation of the contract of sale had been waived by plaintiff who asked defendant to meet him at the office of J. C. Nichols Investment Company on December 2d to close the transaction. However, defendant did not appear. And, January 6, 1944, defendant through her counsel directed a letter to plaintiff's counsel notifying him of her refusal "to proceed in any way with the alleged contract . . ."

While Keystone Mortgage Investment Company had undertaken to lend $20,000 to plaintiff, that company had made requirements of correction of title which had not been met on December 2d, and plaintiff expected to close the transaction with defendant on that date by the payment of $18,000 by cashier's check, and the delivery of an order on the Keystone Mortgage Investment Company to pay the

proceeds ($20,000) of the loan (when made) to defendant. (It seems the title requirements of Keystone Mortgage Investment Company were satisfied on December 10th.) It thus appears that plaintiff did not intend to pay all of the balance of the purchase money, $38,000, in cash, on December 2d, although he testified that he was then able and would have preferred so to do. And, while defendant actively assisted in satisfying the requirements of the Keystone Mortgage Investment Company as to title, and must have known plaintiff intended to pay $20,000 of the purchase price by the proceeds of the loan, there was no evidence that defendant had agreed upon a modification of the contract to obligate her to accept an order on the mortgage company to pay her the proceeds of a loan yet to be consummated, in lieu of the $20,000 in cash. The sums of $18,000, proceeds of the cashier's check, and $2000, paid when the contract was signed, were thereafter held in escrow by the J. C. Nichols Investment Company. And it is seen, from the evidence, plaintiff had not at any time tendered the amount of the balance of the purchase money in cash prior to his institution of the instant suit, January 15, 1944. It is also seen that defendant has not at any time tendered a deed to plaintiff.

We agree with the trial chancellor that the weight of the evidence was with plaintiff upon the issue of the mental capacity of defendant to contract. No doubt defendant was suffering intensely in those days, including October 25th, immediately following the operation, but the record is sparse of substantial evidence, other than defendant's testimony, that defendant had not the mental capacity to execute a contract; and her subsequent conduct, in the making of those arrangements incident to a fulfillment of a contract to sell the land, was not in keeping with the conduct of one who had not consciously undertaken to make the sale.

Of the essentiality of a payment of purchase money, in a purchaser's suit for specific performance of a contract of sale, see the case of Rogers v. Gruber, 351 Mo. 1033, 174 S. W. 2d 830, wherein it was stipulated in the contract involved that time was of the essence of the contract; and see the case of Suhre v. Busch, 343 Mo. 170, 120 S. W. 2d 47, wherein the contract involved was unilateral, an option to repurchase ''at any time within five years,'' the vendor only being bound; consequently, the purchaser was held to the exercise of extreme diligence, and time of acceptance by payment was held by this court to have been of the essence of the contract. See also the case of Wimer v. Wagner, 323 Mo. 1156, 20 S. W. 2d 650, where it was the intention of the parties, as clearly manifested by the bilateral agreement as a whole, considered in the light of surrounding facts, that time was an essential element of the contract involved. The court in these cases had a regard for the established rule—when time is of the essence of the contract, and a purchaser desires to invoke the equitable remedy of specific performance, he must pay or offer to

pay the purchase money upon the date or within the time stipulated. And, as stated in Wimer v. Wagner, supra, this is true (absent definite acts or facts convicting the vendor in advance of a breach on his part) although the purchaser thinks the vendor will be unable to convey on the stipulated date, or within the stipulated time. In the case at bar, if there was a time stipulated, as an essential element of the contract, for the performance of the contract (the time being prior to defendant's repudiation, January 6, 1944) and if plaintiff has failed to tender the balance of the purchase money at the stipulated time, plaintiff should be denied the remedy of specific performance, unless there be something in the facts to take the case out of the usual rule. Wimer v. Wagner, supra. It was provided, "Time is of the essence of this contract." But *no date* was specifically stipulated for the performance of the contract, and the time at which the contract was to be performed was not provided, except as we have noticed in the excerpts from the contract quoted supra.

It is assumed the time for the performance of the contract was intended to be the time it was determined defendant had a "merchantable fee simple title," such time being fixed, by the facts of the case, when plaintiff waived the satisfaction of his title requirements. At that time the defendant should have delivered, or offered to deliver, a deed; at that time, according to the established rule, notwithstanding a failure of defendant to perform, the plaintiff should have tendered the balance of the purchase money in cash, if he purposed to avail himself of the remedy of specific performance.

But the facts take the case from the purview of the established rule. Though it may be considered that time was originally an essential element of the contract, the essentiality of a timely performance was surely waived, inasmuch as the parties continued in a recognition of the contract's existence. December 3d, subsequent to the time plaintiff had waived the satisfaction of his title requirements, and subsequent to the time plaintiff undertook to close the transaction by the payment of $18,000 and the delivery of an order upon the Keystone Mortgage Investment Company for the proceeds of the loan afterwards consummated, the defendant was actively aiding plaintiff in the satisfaction of the title requirements of the mortgage company; and as late as December 13th defendant admitted plaintiff's employees into the occupancy of the improvements on the land. Finally, defendant's repudiation, or attempted rescission, of the contract on January 6th was never asserted as having been made because plaintiff had not tendered a timely payment of the balance of the purchase money in cash.

The absence of proof of a modification of the contract to obligate defendant to accept payment from the proceeds of a loan, as pleaded, is not regarded as a failure of proof of the cause of action stated. Absence of proof the defendant had so agreed was vital only upon

the issue—was there a tender of performance by plaintiff when he tendered $18,000 and the order upon the Keystone Mortgage Investment Company for $20,000? The failure to show plaintiff's tender at the stipulated time did not defeat plaintiff's suit for specific performance, since the evidence shows the stipulation as to time was waived.

Though by stipulation time is made of the essence of a contract, yet if it appears in a suit for specific performance of the contract that the parties have waived the stipulation, it cannot be set up to defeat the relief sought. Rogers v. Gruber, supra; 49 Am. Jur., Specific Performance, sec. 42, p. 57; 58 C. J., Specific Performance, sec. 373, p. 1099.

The consideration, $40,000, was not so inadequate as to make unsconscionable the enforcement of defendant's performance. Our examination of the evidence as a whole has disclosed no overreaching of defendant; nor any fraud on the part of the plaintiff, nor on the part of any other person concerned; and the contract appears to be complete and free from unfairness or injustice affecting defendant. We are constrained to the view the decree should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.