FLORENCE LOWE BRYANT, Appellant, v. THOMAS A. KYNER and ERMA M. KYNER.—No. 40193.—204 S. W. (2d) 284.

Division Two, July 14, 1947.

Opinion Modified on Court's Own Motion, September 8, 1947.

898

*Raymond E. Martin, Cowgill & Popham* and *Sam Mandell* for appellant.

*Roy Rucker* for respondents.

ELLISON, J.—The plaintiff appeals from an adverse decree in an equity suit brought by her in December, 1945, in the Jackson County circuit court, to annul her written contract for the sale of land to the defendant-respondent, Thomas A. Kyner, and to set aside a decree in his favor in a former suit requiring specific performance by appellant of that contract, which was affirmed by this court in April, 1945, in Kyner v. Bryant, 353 Mo. 1212, 187 S. W. (2d) 202. The respondent Erma M. Kyner is the wife of Thomas A. Kyner, and was joined as a defendant merely because of her marital rights. Hereafter we refer only to him when using the word "respondent".

In general, the grounds of appellant's instant suit are that after our mandate in the former suit went down, the respondent refused to abide by the decree therein in his favor, and stopped payment of a part of the purchase money due appellant under the contract in issue. The respondent contends it was the appellant who disobeyed the decree in the former suit, by refusing to execute a warranty deed on the pretext that the land description in the decree was deficient. He maintains that he acted within ▮▮▮▮ his rights; and that the stakeholder of the purchase money, not himself, was the one who withheld the unpaid portion thereof.

In greater detail, the facts are as follows. The written contract recited that the appellant agreed to sell the respondent a farm in Jackson County "containing 220 acres, more or less" for a cash consideration of $40,000, of which $2,000 was deposited in escrow by the purchaser with the J. C. Nichols Investment Company when the contract was signed, the remaining $38,000 to be paid in cash "on delivery of deed[1] as herein provided." In a subsequent paragraph the

---

[1] Italics in quotations throughout the opinion are ours unless otherwise indicated.

contract stipulated: "If the seller (the appellant) has a merchantable fee simple title to said property, the seller shall deliver to the buyer (the respondent) at the office of said J. C. Nichols Investment Company *a General Warranty Deed, properly executed and conveying said property free and clear of all liens and encumbrances whatsoever* (with specified exceptions); the buyer shall then and there pay the balance, if any, of said cash payment, . . . "

It appears from the opinion in the former specific performance suit, supra, that the contract was modified by the parties and the respondent was permitted to negotiate with a. Keystone Company a mortgage loan on the farm for $20,000, one-half the purchase price, and to pay that much of the consideration out of the loan. At any rate appellant cooperated in the negotiation of that loan, and it was consummated, $18,000 of the borrowed $20,000 being deposited with the J. C. Nichols Investment Company along with the $2,000 it already held in escrow, leaving $20,000 in cash to be paid by respondent when the transaction was closed. In the negotiations for the $20,000 loan the Keystone Company made same objections to the title which were satisfied by appellant, the respondent waiving objections to the extension of time for doing this. Also, in December, 1943, the appellant permitted respondent's employees to enter upon the farm and make improvements. But in January, 1944, appellant refused to carry out the sale contract, and respondent brought the specific performance suit and obtained the decree mentioned in the first paragraph hereof, which was dated June 24, 1944.

That decree adjudged that respondent here have specific performance of the contract of sale, describing the land as it was described in the contract; that he pay into the registry of the court within five days, the sum of $20,000, being the balance of the $40,000 purchase price (above the $20,000 held by the Nichols Company); and that the appellant here *"deposit* with the clerk of (the) court *her warranty deed* to Thomas A. Kyner, to the real estate hereinabove described within ten (10) days from the date of this judgment," along with the abstracts of title. After two intervening short paragraphs the decree further provided: "It is further ordered, adjudged and decreed that if *defendant* (appellant here) . . . *fail to deposit* with the clerk of (the) court within ten (10) days from the date of this judgment her *warranty deed* to the real estate hereinabove described, *then the title* to and the right of possession . . . *shall vest absolutely and in fee simple* to plaintiff, Thomas A. Kyner."

The land description in both the sale contract and the specific performance decree was the same. It began: *"Part* of the North 1188 feet of the northeast ¼ of the Northwest ¼, Section 24, Township 48, Range 33, being 21.6 acres." Next included, by proper governmental description, were 158 acres of other land in the same section, all followed by the words "the above lying east of the railroad tracks

and east of the Knight addition." Next and last was a 39.82 acre tract in another section—all adding up to 219.42 acres.

The specific performance decree in that case further allowed the plaintiff (respondent here) judgment over against the defendant (appellant here) in the sum of $673.26, out of the $20,000 he had paid into court or had held available for payment on the purchase price, this representing interest on that sum during the time the defendant had delayed consummation of the sale transaction by her resistance to the specific performance suit, and ordered the balance ■■■ of $19,326.74 to be paid to the defendant. The defendant (appellant here) promptly appealed to this court.

After our mandate in that suit went down counsel for the defendant (appellant here), although contending appellant had become reconciled to her defeat, nevertheless wrote counsel for plaintiff (respondent here); on May 16, 1945, stating they were trying to locate the abstracts of title, and that the defendant would execute a warranty deed to all of the land included in the contract and specific performance decree *except* the first item in the description, namely, "*Part of the North 1188 feet of the northeast ¼ of the northwest ¼, Section 24, Township 48, Range 33, being 21.6 acres.*" Concerning that item the letter said, in substance, that it failed to show what if any land was intended to be conveyed thereunder, and that it was counsel's opinion the appellant was not obligated by the specific performance decree to convey any land lying within that description.

Thereupon counsel for respondent on May 21, 1945, wrote the J. C. Nichols Investment Co., which held the remaining $20,000 of the consideration money, notifying that company as broker and stakeholder, that they (respondent's counsel) contended the specific performance decree primarily required appellant to execute to respondent a warranty deed describing the farm in such manner as would make a binding conveyance under the terms of the contract, and that the requirements with respect to the payment of taxes should be observed. In that letter they notified the Nichols Company *not to pay out any of the money in their hands until there had been a binding conveyance.*

Two days later, on May 23, 1945, counsel for respondent also answered the above letter of May 16 which appellant's counsel had sent them, and demanded that appellant execute a warranty deed to respondent with the 21.6 acre tract included in the land description. They said it would be necessary to do that to fill out the 220 acres; that the "blue print" showed that tract included in the farm; and that the location of the land was well known to the parties. The letter conceded that in default of a deed, title to the farm would pass to respondent by operation of law; but that appellant's right to the $20,000 held by the J. C. Nichols Investment Co. should be considered in relation to appellant's full performance. The last sentence of that

letter of May 23 said: *"We have notified the J. C. Nichols Company of our views herein expressed."*

The appellant had surrendered possession of the farm to the respondent, except the 40 acre tract on which her residence was located, where she was storing her household goods because of a dearth of storage facilities in Kansas City. This she retained, and respondent made application for a writ of assistance to oust her, sometime before June 19. On that date appellant's counsel wrote respondent's counsel concerning this writ. They stated appellant could not find a place to store her furnishings; and called attention to the fact that appellant had not received any of the consideration money from the circuit clerk. The letter declared appellant was still standing on her contention that the land description which we have called item 1 in the specific performance decree, "does not pass any title to plaintiff (respondent) on any land" therein.

Four days later on June 23, a hearing was held by the court on respondent's petition for a writ of assistance, and the court ordered the costs paid by appellant and the $20,000 in the clerk's hands disbursed as provided in the decree. The respondent accepted his $673.26, and the appellant accepted her $19,326.14. It seems the writ was executed as to possession about two weeks later, and that the respondent was put in possession of that part of the farm which appellant had been retaining.

Appellant's brief states she took the $19,326.14 without any knowledge on her part, or on the part of her attorneys, that respondent's counsel had notified the Nichols Company not to pay out any of the $20,000 in its hands; that as soon as she learned of that fact on June 26, she returned the check to the clerk. But the letter of May 23, supra, from respondent's counsel to appellant's counsel, as set out in her own brief and sketched in the second preceding paragraph hereof, expressly states in the last sentence that respondent's counsel had notified the Nichols Company (which would have been over a month before) of their views as expressed in that letter.

However that may be, on June 26, the day on which the $19,326.14 check was returned to the circuit clerk, appellant's counsel wrote respondent's counsel: protesting against their "interference" by notifying the Nichols Company not to pay out any money in its hands; notifying them that appellant refused to accept the check from the clerk; demanding that they release the hold order; and stating that otherwise they (appellant's counsel) would "take the matter up with the court."

That letter was answered on June 27 by respondent's counsel, their letter stating they would as far as possible prevent the payment of the *whole* purchase price until their client got a "binding conveyance" of all the land covered by the sale contract, and at the contract price. Then the letter asked counsel for appellant to state whether they

contended appellant was entitled to all the purchase money without surrendering possession of the part of the farm she was still occupying, and of the 21.6 acres with the challenged description. The next day, June 28, appellant's counsel replied by letter, and as we view it, for the first time stated the theory which is advanced by appellant on this appeal—although they protested they "had already done so, in terms very explicit and very clear." This is what the latter said:

. "It is our position that Mrs. Bryant (appellant) is not required by the decree to execute *any* deed. The provision in the decree that she was to execute a deed within ten days after it (the decree) was filed, was stated in the *alternative*. The court and the draftsmen of the decree made an alternative provision, providing that if the deed were not executed, the title to all property to which the decree passed title would vest in Dr. Kyner on final judgment and without deed. Mrs. Bryant has fully reconciled herself to such effect of the decree. Ever since the decree and judgment became final Mrs. Bryant has at all tims been willing to strictly comply with its terms. No more and no less is asked of you and the plaintiff. There is certainly no ambiguity in our position or our demands. As of June 26th we reiterate our demands and statements in that letter contained."

The secretary of the Nichols Company testified that company received the letter of May 21 from respondent's counsel warning it not to pay out the money in its hands until appellant had executed a binding conveyance; and that that letter "strengthened (the) company's conclusion that they should not pay it out until everything was agreeable." This witness further said counsel for appellant advised him in June that she was ready to perform all the conditions of the decree on her part, and requested the company to close the sale. However appellant was still standing on her contention that she would not execute a warranty deed.

▮ At the trial of the instant case, on cross-examination and over appellant's objection, one of appellant's counsel testified that the disputed 21.6 acres (item 1 in the land description) was not separate from the rest of the farm and that it was shown on the blueprint, or plat marked Exhibit A. It was stipulated that this plat would not be incorporated in the transcript but would be brought up on appeal as an exhibit. We are unable to find it in the file. However, what we assume to be the same or a similar plat was in the record in the Kyner-Bryant case, supra, 353 Mo. 1212, 187 S. W. (2d) 202. It there describes the disputed 21.6 acres as: "Pt of N. 1108' of NE¼ of NW ¼ 24-48-33 E of R W., 21.6A." The "R W" there obviously refers to the railroad right of way of the Kansas City Southern Railway, which is shown as forming a curved boundary across the west side of the north 1188 feet of the quarter-quarter section. In other words the disputed land is that part of the 40 acres east of the railroad, and it adjoins the rest of the farm.

Respondent testified over appellant's objection that appellant pointed out the boundaries of the farm to him and furnished him with the blueprint; that it correctly shows the railroad right of way and the boundaries of the farm; that he had paid his part of the taxes; that he had ▮▮▮ been put in possession of the 21.6 acres along with the rest of the farm, all enclosed by fences; and that he had over $35,000 in improvements since he had first gone into possession of most of the land long before the dispute arose as to the 21.6 acres.

▮ Respondent's counsel conceded the court's specific performance decree would and did vest appellant's title to the farm in respondent. The legal question was whether that would be the full equivalent of a general waranty deed with covenants of warranty, such as both the sale contract and specific performance decree required appellant to execute and deposit with the circuit clerk. Another question was whether, even if the above be true, the appellant had brought herself within the maxim "He who seeks equity must do equity." At any rate it seems the status quo continued from July to December, with the circuit clerk holding the $19,326.14 appellant had first taken down and then paid back to him; and with the Nichols Company still holding the $20,000 deposited with it. In the meantime the appellant persisted in her refusal to execute a warranty deed, and on December 28 brought this suit to annul the sale contract and prior specific performance decree.

The trial chancellor found all the disputed questions of law and fact in favor of respondent. The decree was for respondent, and required the appellant to accept the respondent's deposits of $20,000 with the circuit clerk and $20,000 with the Nichols Company—less the $673.26 interest money adjudged to respondent out of the former deposit at the writ of assistance hearing, and less $690.40 allowed to respondent out of the Nichols $20,000 for taxes paid by him. The fee simple title was decreed vested in respondent; and appellant, her heirs and assigns were perpetually enjoined from molesting or interfering with the title or possession of respondent, his heirs or assigns. The decree did *not* mandatorially require the appellant to execute a general warranty deed conforming to the sale contract, as had the previous specific performance decree, affirmed here in 1945.

Appellant's first and main point on this appeal is as follows. Her brief invokes Sec. 1255 R. S. 1939-Mo. R. S. A. which provides that "in all cases where judgment is given for the conveyance of real estate . . . , the court may, by such judgment, pass the title of such property, without any act to be done on the part of the defendant." She maintains this statute dispensed with the necessity of a deed from her; and that since the prior specific performance decree provided that title and possession should vest absolutely in the respondent if she failed to deposit her warranty deed with the circuit clerk, therefore,

when she failed to make the deed the respondent became seized of the title and has been ever since.

Thence she argues that inasmuch as the former decree by operation of law automatically performed the contract for her, she was not in default, and that the respondent breached and repudiated the contract on his part when, through his counsel, he accepted the $673.26 interest money adjudged to him, but nevertheless notified the Nichols Company not to pay out the $20,000 in its hands unless and until she had executed a binding conveyance. Appellant argues throughout her brief that Sec. 1255, supra, provided an *alternative* method of carrying out the land sale contract; that it inured to her benefit as well as to that of respondent; and that she was thereby purged of any unwillingness to perform, or contempt because of her refusal to obey the former decretal order requiring her to execute and deposit her warranty deed with the circuit clerk in ten days.

We do not agree. While it is true that Sec. 1255, supra, and also Sec. 1257, may make the decree, itself, operate as a conveyance,[2] yet they do *not* provide mere alternative methods of conveyance at the *vendor's* option, when the decree also requires the execution of a warranty deed. They are for the protection of the vendee where the vendor cannot or will not make the conveyance, or the court does not see fit to require it. Undoubtedly a conveyance by decree would pass whatever title the vendor had at the time. How far it would pass a title afterward acquired by inurement from persons not parties to the suit, under Sec's 3407 and 3497, R. S. 1939-Mo. R. S. A., is a question not much discussed in our decisions. (See the Young case just cited below, marginal note 2.) We do not mean to intimate it would not, but it seems the vendee's title would be better quieted if the vendor executed a deed with personal covenants of warranty, eliminating all questions of adverse claims. At any rate, Sec's 1255 and 1257, supra, both expressly contemplate that requirement may be made when the parties have so contracted, and Sec's 172 and 173, R. S. 1939-Mo. R. S. A. make the same requirement of executors and administrators.

 Such is the general rule elsewhere.[3] But the authorities appear to be unsettled as to whether or not the execution of a deed under the decree may be enforced by contempt proceedings, injunction and other remedies operating in personam, where the statute provides, as ours does, that the decree itself may operate as a conveyance. We so stated in State ex rel. Place v. Bland, 353 Mo. 639, 658(10), 183 S W. (2d) 878, 890(26)—especially when the position of the parties is reversed and it would amount to imprisonment for debt, as if a vendee were im-

---

[2]Macklin v. Allenberg, 100 Mo. 337, 341(1), 13 S. W. 350, 351(1); Otto v. Young, 227 Mo. 193, 215-7(5, 8), 127 S. W. 9, 17-18(9).

[3]Restatement, pp. 633-644, secs. 358-360, Comments (b) and (d); 58 C. J., p. 1226, sec. 578, p. 1265, sec. 615, p. 1272, sec. 628, p. 1274, sec. 630; 49 Am. Jur., p. 202, sec. 178.

prisoned for contempt for failure to pay the purchase price. Nevertheless it is said the rules relating to the enforcement of decrees in equity in general ordinarily are applied, including contempt.[4] And 49 Am. Jur., p. 202, sec. 178 states that "a statutory provision to the effect that a decree shall operate as a conveyance does not deprive the court of power to enforce the specific performance of its decree requiring a conveyance," citing Clark v. Cagle, 141 Ga. 703, 82 S. E. 21, L. R. A. 1915A, 317.

Appellant contends the provisions of Sec. 1255, supra, made the former decree of specific performance operate as a conveyance of the farm to respondent, and purged her of disobedience in refusing to execute a warranty deed as that decree required. We are convinced that it did not. We have already shown the letters of her counsel dated May 16 and June 19, 1945, asserted she need only make a warranty deed omitting *part* of the land. It was then that respondent's counsel notified the Nichols Company on May 21 not to pay out the money in its hands until appellant executed a binding conveyance of the whole farm. Later, by their letter of June 26, appellant's counsel maintained she was not obliged to execute any deed at all, although the prior decree required it. If the position of appellant and respondent had been reversed, and she had been trying to enforce performance of the sale contract on him, she would have been required to show she had been ready, willing and able to perform.

Here, she comes into equity in a new suit seeking to annul the sale contract and to set aside the previous specific performance decree against her, after possession of the farm had been delivered to respondent and he had made valuable improvements thereon; and notwithstanding she had obstructed the consummation of the decree by refusing to execute a deed, as directed therein. Nevertheless she insists that Sec. 1255, supra, must be read into and treated as a part of the contract; that she must be treated as having adequately performed the contract on her side; and that the respondent must be convicted of having breached the contract, because his counsel notified the Nichols Company not to pay out the purchase money in its hands until she had executed a warranty deed as the contract and previous decree. required.

We hold respondent was within his rights. The provision in the previous decree that the title would vest in him even if she failed to execute the warranty deed, was for his protection, not hers. Certainly this is true if the court had the right ▮ to require her to make a warranty deed, as it unquestionably did.[5]

[4] 58 C. J., p. 1275, sec. 631, p. 1277, sec. 634, p. 1278, sec. 635; 21 C. J., p. 693, sec. 866; 19 Am. Jur., p. 289, sec. 420; 12 Am. Jur., p. 405, sec. 24.
[5] McGinness v. Brodrick (Mo. Div. 2), 192 S. W. 420, 422(5); McPherson v. Kissee, 239 Mo. 664, 669-670, 144 S. W. 410, 412(3); Lanyon v. Chesney, 186 Mo. 540, 551-3(1), 85 S. W. 568, 570(3); Greffet v. Willman, 114 Mo. 106, 121-2(7), 21 S. W. 459, 462(4).

Appellant has cited Hannan v. Wilson, 100 N. J. Eq. 463, 136 Atl. 499, which held a decree of specific performance of a contract to purchase land does not make a new contract, though enforced by a statute[6] like our Sec. 1257 without willing performance by the vendee. Appellant invokes this decision to support her theory that she has legally performed the instant contract, but that respondent, by stopping payment of the $20,000 held by the Nichols Company, in effect substituted a new contract. But in that case the plaintiff vendor had deposited a deed as required by the decree, and was upheld by the court.

One other point under this decision should be noted. The chancellor there held the New Jersey statute was for the benefit of the *successful* party; that it protected a vendor as well as a vendee; and that a vendee must perform the contract on his side. But during the same year the New Jersey Court of Errors and Appeals overruled that case, and held the statute was for the sole benefit of a vendee, not a vendor. Hannan v. Wilson, 101 N. J. Eq. 743, 139 Atl. 165.

Our statutes are set out below.[7] We think our Sec. 1257, like the New Jersey statute, is for the benefit of vendees solely, and runs only against vendors. For its condition is that if "the party required *to execute* the (conveyance) shall not comply" with the judgment, then the judgment shall operate as a conveyance. On the other hand, Sec. 1255 provides "the court may, by such judgment, *pass* the title of such property, without any act to be done on the part of the defendant." This implies that statute is for the benefit of a vendor seeking to pass the title to an unwilling vendee. In the prior specific performance case involved here the respondent was the plaintiff vendee, seeking to enforce the conveyance of the farm to him by the defendant (plaintiff-appellant here). And since appellant now contends here that he was successful by operation of law without any voluntary conveyance by her, we think she should have invoked Sec. 1257 in her brief instead of Sec. 1255, as she did do.

But we do not hold that against her. Sec. 1257 applied if Sec.

[6]The New Jersey Statute was as follows: Comp. Stat. p. 426, sec. 45. "Where a decree of the court of chancery shall be made for a conveyance, release or acquittance of lands or any interest therein, and the party against whom the said decree shall pass, shall not comply therewith by the time appointed, then such decree shall be considered and taken, in all courts of law and equity, to have the same operation and effect, and be as available as if the conveyance, release or acquittance had been executed conformably to such decree, and this, notwithstanding any disability of such party by infancy, lunacy, coverture or otherwise."

[7]Sec. 1255 "In all cases where judgment is given for the conveyance of real estate or the delivery of personal property, the court may, by such judgment, pass the title of such property, without any act to be done on the part of the defendant."

Sec. 1257 "When an unconditional judgment shall be made for a conveyance, release or acquittance, and the party required to execute the same shall not comply therewith, such judgment shall be considered and taken to have the same operation and effect and be as available as if the conveyance, release or acquittance had been executed conformably to the judgment."

1255 did not. The ultimate question in this case is whether the fact that one or the other of these statutes executed the conveyance for her notwithstanding her own disobedience, gives her standing in this case as one who has done equity. We hold it does not. And we have pointed out other reasons why her present suit should fail, such as her delivery of possession of most of the farm and the expenditure of $30,000 for improvements thereon by respondent, before this suit was filed. Further, the chancellor found the stakeholder, the Nichols Company, had already decided not to pay out the $20,000 in its hands until the parties ▮▮▮ were in agreement, before respondent's counsel wrote the letter of May 21, which is the main basis of this suit. There is no merit in the contention that the title to the farm is defective. All title requirements had been satisfied when the $20,000 mortgage loan was placed thereon.

The decree below is affirmed, and the cause remanded under Sec. 140(c) (e), Civil Code, Laws Mo. 1943, pp. 353, 395; Sec. 847.140 (c) (e), Mo. R. S. A., in order that the same may be carried into execution by the trial court.

Affirmed and remanded. All concur.