No. 25,816.

L. E. DENNY et al., *Appellees*, v. (THE GUARANTEE TITLE AND TRUST COMPANY, *Appellee*) J. P. CLARK, F. C. CONDON and J. A. LINN, Interveners, *Appellants*.

#### SYLLABUS BY THE COURT.

TRUSTS—*Creation and Acceptance—Evidence.* It is held that there was no evidence of the acceptance by the trustee of the trust defined in a contract which by its terms was not to become effective until such trust should be accepted by him in writing.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed April 11, 1925. Affirmed.

*C. G. Yankey, W. E. Holmes, D. W. Eaton,* and *John L. Gleason,* all of Wichita, for the appellants.

*Gilbert H. Frith* and *Louis E. Clevenger,* both of Emporia, for appellees L. E. Denny and Minnie Denny; *W. R. Glass,* of Wichita, for appellee The Guarantee Title and Trust Company.

The opinion of the court was delivered by

MASON, J.: L. E. Denny and his wife had a royalty interest in the oil to be produced from a tract of land. F. C. Condon and two others had a similar interest in that to be produced from another tract. They entered into negotiations to pool the two interests and sell "units," each representing a 1/2000 share in the combined properties. In February, 1919, they signed a contract providing that the title to both properties, each of which was valued by the owners thereof at $100,000, should be transferred to the Guarantee Title and Trust Company, which was to execute one certificate for 1,000 units to the Dennys and another for a like number to Condon and his associates. Condon and one of his associates were to undertake the sale of units, none of the expense of sales of the first half to be charged to the Dennys. As units were sold their amount was to be deducted in equal parts from the certificates owned by the Dennys and by the Condon group. The trust company was to collect the royalties for division between the beneficial owners. Such transfer of title to the trust company was made, and it executed the two 1,000-unit certificates. On May 19, 1919, 150 units were sold to one person, to whom certificates were issued. No other sales appear to have been made. A well drilled on the land covered by the royalty interest held by the Condon group and by them assigned to the trust company was abandoned between the latter part of May and the middle of June, 1919, and that royalty never produced any income. Some royalty was collected by the trust company. On December 10, 1923, the Dennys brought this action against it for an accounting, asking the payment to them of all the royalty collected, upon the ground that the pooling agreement had never become effective and this money had been derived wholly from the plaintiffs' interest. Condon and his associates intervened and filed a pleading asking to be awarded half the money collected by the trustee, upon the theory that the pooling agreement had become operative. The court sustained a demurrer to the evidence of the interveners upon this issue, and from that ruling this appeal is taken.

The written agreement between the plaintiffs and the interveners contained this language: "This contract shall not be binding upon the parties hereto until the trust herein created is accepted by the trustees [the trust company] herein named, in writing." The interveners contend that the company did accept the trust in writing, or

if not, then that the plaintiffs waived the requirement that the acceptance should be in writing. The plaintiffs assert that the company not only never accepted the trust by any writing, but never accepted it in any way. The contention of the interveners is thus stated by them:

"Denny contends that the escrow agreement [by which term is meant that signed by the plaintiffs and the interveners] never became binding upon him for the sole reason that it was not accepted in writing by the trustee. Clark, Condon and Linn contend, first, that the trust was in fact accepted by the trustee in writing, and that such written acceptance was taken and received byi Denny and by him retained, and that during all of the period which elapsed from the making of the trust agreement until the bringing of this suit, the trustee continued to act as trustee and continued to do all the things required of it to be done under the escrow agreement under such acceptance in writing; and second, that Denny's conduct in regard to the matter amounts to a complete waiver of that provision of the escrow agreement which required that it be accepted in writing by the trustee."

The contract executed by the plaintiffs and the interveners also contained a provision that if after six months as much as $100,000 worth of units had not been sold, the plaintiffs should have an option to require the trust company to return to them the portion of the property they had contributed to the part which then remained unsold, the plaintiff L. E. Denny then to succeed to the trustee's rights and obligations to the owners of the units that had been sold, to the extent of their interest in the Denny property. This contract was submitted to the trust company. It prepared and signed a writing, undertaking on its part to receive and hold the title to the royalties, issue certificates of the sale of units of the combined properties, collect and disburse the royalties, and do other acts in accordance with the plan embodied in the original contract, but without mentioning that document and without directly or by inference accepting the provisions concerning the option already referred to. The interveners assert that a written acceptance by the trust company of the trust created by the original contract resulted from its signing the document prepared by it, and also from its signing the certificates of the sale of units. The trust company at all times, by writing and by oral statement, refused to accede to the part of the original contract relating to the option referred to unless upon condition that if such option were exercised all the certificates of units which it had issued should be returned to it. In view of this fact, neither the execution of the trust agreement prepared by it nor the signing and delivery of certificates of units can be regarded as an

acceptance or evidence of the acceptance of the trust described in the original contract. The provisions of that contract relating to the option given to the plaintiffs obviously formed a material part of the trust agreement. Until the trust company should agree to those provisions it could not be said to have accepted the trust created by the written agreement between the plaintiffs and the interveners. Inasmuch as it never did agree to them, but distinctly refused to do so unless a new condition were added, the trial court was right in ruling against the contentions of the interveners as already set out. The interveners call attention to the circumstance that the option was never exercised; that, however, does not affect its materiality as an element of the trust the company was required to undertake to give the contract force. The original contract was delivered to the trust company, together with a deed to it of the Denny royalties about April 25, 1919. The statement of the trust agreement prepared by the trust company was dated April 30, 1919, and shortly thereafter was submitted to the plaintiffs. Their attorney on May 7, 1919, wrote to the company saying it seemed to be all right, except that it contained no acceptance of the trust agreement set out in the original contract, adding: "We would like to have some agreement from you, as trustee, to the effect that you will carry out and perform the terms of that trust agreement, in so far as the terms thereof are to be performed by you." On May 22, 1919, the company replied to this letter, referring to several matters included in the original contract which are not now important, and asking an explanation of the option provision, which was furnished in a reply on June 9, 1919. On June 11, 1919, the company wrote to the plaintiffs' attorneys: "We will accept the escrow agreement with the understanding that before Mr. Denny succeeds us as trustee he will first return to us all trustee's certificates issued by us under our trustee's agreement." This clearly was not an acceptance of the trust described in the contract signed by the parties, but an expression of willingness to do so if a change were made in it. On January 6, 1920, the company wrote to L. E. Denny that they could accept the trust described in the original agreement if two minor changes (one of them a mere correction of a clerical error) were made, and if the provision regarding his option to succeed to the trusteeship were stricken out. On February 20, 1920, the company again wrote to him, saying:

"Replying to your letter of February 16, 1920, with reference to the Two in One Royalty, will say that I am considerably surprised at the attitude of your

19—118 Kan.

letter, considering the fact that when you and your attorney were in my office you told me that everything was satisfactory and that you would have your attorney draw up an agreement in place of the old agreement, which would be in accordance with my ideas. As this has been a rather mixed-up proposition from the beginning, and we have been caused considerable trouble and bother in trying to get it straightened out, we would much prefer that you and Mr. Condon and the rest of your parties get together and settle the proposition in some way."

There appear to have been no further material communications between the parties until on October 1, 1923, the plaintiffs' attorney wrote to the trust company demanding the royalty collected, "inasmuch as this money was received exclusively from oil from property belonging to Mr. and Mrs. Denny," and asking a prompt reply in case the demand was not to be complied with.

Either on April 30, 1919, or a day or two earlier, the treasurer of the trust company, who acted for it in the matter, had a talk with L. E. Denny and his attorney, in which the treasurer said that the company could not agree to turn the property back after certificates of units had been issued, unless the certificates were canceled, and stated the kind of agreement the company was willing to make. showing a copy of one. Denny and his attorney then said if the company would prepare one of those agreements and send it to them it could go ahead on the deal, saying, "Well, go ahead, file the deed [which the plaintiffs had executed to the company covering their royalties], so these folks can get busy and sell their units, and write up the trust agreement and send it to us," which was done. About May 1, 1919, L. E. Denny told Condon he had had a conversation with the representative of the trust company, and that all differences regarding the trust arrangement had been agreed upon and for the interveners to proceed to sell the units, which they did.

These matters do not supply the defect in the interveners' case. Only one contract for the creation of a trust was ever entered into between them and the plaintiffs. The issue presented is whether the trust company accepted the trust therein described. Not only is there no evidence that the company ever accepted that trust in writing or otherwise, but the affirmative proof is that it at all times refused to do so.

After the demurrer to the interveners' evidence was sustained, further evidence was taken relating to a claim of the trust company for compensation, and an allowance was made to it. This was not contested by the plaintiffs and no appeal is taken from the order. The interveners suggest that a recognition of an obligation to pay

Denny v. Guarantee Title & Trust Co.

the company for its services is inconsistent with the theory that the trustee did not accept the terms of the trust set out in the original contract. We do not regard the argument as sound. The plaintiffs might place the title to its property in the trust company and permit it to collect the revenue in the expectation that an agreement would be reached for the carrying out of the pending deal, and thereby become obligated to compensate it for its trouble, without admitting that a particular proposition had been agreed to by the interveners and themselves, or that their minds had met upon the terms of a contract. The testimony of L. E. Denny at the hearing subsequent to the sustaining of the demurrer developed on cross-examination by the interveners, and quoted by them in this connection, illustrates this view:

"Q. Why did you permit the Guarantee Title and Trust Company to collect the royalty? . . . A. I had an escrow agreement with the Guarantee Title and Trust Company, and I considered the Guarantee Title and Trust Company one of the reputable firms in Wichita.

"Q. And it was perfectly agreeable to you? A. It was perfectly agreeable to me that they should handle all of the income out of this property down there until such a time as they would accept this trust agreement [the original contract].

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. And it has been agreeable to you all the time for the trust company to continue to collect these royalties up to this time, has it? A. It has."

The interveners also argue that because in the letter of the plaintiffs' attorney to the trust company of October 1, 1923, the payment to the plaintiffs of all the money collected is demanded on the ground that "this money was received exclusively from oil from property belonging to Mr. and Mrs. Denny," it is to be inferred that the plaintiffs were not then standing upon the proposition that the original contract was ineffective for want of an acceptance by the company of the trust therein defined. To us the letter appears to assume that to be the situation, for otherwise it would be immaterial from which property the royalties had been collected. The interveners further suggest that in asking a prompt reply to the letter, if the demand was not to be complied with the plaintiffs showed that a compliance was not expected and that the purpose of the demand was to lay the foundation for an action. However, a belief that litigation will be necessary to enforce a claim can hardly be regarded as evidence that it is not valid.

The judgment is affirmed.