BRICKEY *v.* SULLIVAN.

4-7587 187 S. W. 2d 1

Opinion delivered April 23, 1945.

*Wils Davis,* for appellant.

*Ivy & Nailling,* for appellee.

Smith, J. Appellant and his mother entered into a contract reading as follows:

## "AGREEMENT TO PURCHASE STOCK

"This agreement made and entered into on this day by and between Mrs. G. R. Brickey, hereinafter known as party of the first part, and A. G. Brickey, hereinafter known as party of the second part, witnesseth:

"That whereas, A. G. Brickey, is indebted to Mrs. G. R. Brickey in the sum of $10,144.15, being the amount due, including principal and interest on a note and judgment rendered against A. G. Brickey, and whereas, the said A. G. Brickey owned certain stock in the Brickey & Ayres Lumber & Gin Company; and the said A. G. Brickey has this day surrendered eighty-eight (88) shares of stock in said Gin Company to the said Mrs. G. R. Brickey in settlement of his indebtedness. And whereas eighty-eight (88) new shares of stock has been issued to Mrs. L. E. Brickey, being the same and identical person as Mrs. G. R. Brickey, in lieu of stock surrendered; and whereas, the said A. G. Brickey is desirous of buying and purchasing from the said Mrs. L. E. Brickey said stock; and the said Mrs. L. E. Brickey has agreed to sell same on the conditions and terms hereinafter set out.

"It is therefore agreed and understood, that the eighty-eight (88) shares of stock, being stock certificate No. 13, issued on the 3rd day of July, 1933, has a valuation of $10,144.15. And the said A. G. Brickey has agreed to purchase same at said price. It being understood and agreed that the said A. G. Brickey is to have until December 1, 1934, to pay for said stock. It being further understood and agreed that in the event the said A. G.

592

Brickey does pay for said stock before December 1, 1934, that he is to pay to Mrs. L. E. Brickey in cash, $10,144.15, together with 7 per cent. interest on said amount from this date until the date of payment.

"It being further understood and agreed that in the event the said A. G. Brickey fails to pay for said stock on or before December 1, 1934, then he forfeits his right to purchase said stock and this agreement is to become null and void.

"It being further agreed and understood that in the event the said A. G. Brickey does pay for said stock and pays the sum of $10,144.15 and interest thereon from this date until date of payment, then the said Mrs. L. E. Brickey agrees to deliver, transfer and assign said stock to the said A. G. Brickey.

"It being further understood and agreed that this is an option to buy and purchase said stock and that the said Mrs. L. E. Brickey has a right to vote at all directors' meetings and to do all other things authorized under the law as a stockholder in the said Brickey & Ayres Lumber & Gin Company. That upon the failure of the said A. G. Brickey to pay for said stock within the time mentioned then he forfeits any and all right he has to purchase said stock.

"This agreement made in duplicate on this the 3rd day of July, 1933."

This suit was filed September 16, 1942, which was 9 years, 2 months and 13 days after the date of this contract, and 7 years, 9 months and 15 days after the expiration of the time given for the repurchase of the stock, in which suit the complaint alleged that the officers of the corporation had "caused said stock to be fraudulently reissued in the name of Mrs. Brickey," and further that said contract was intended to be, and in fact was, a mortgage, given to secure the payment of the judgment which appellant's mother had recovered against him, and it was prayed that the right to redeem this stock be accorded him upon paying the debt secured,

and the accrued interest. The complaint was dismissed as being without equity, and from that decree is this appeal.

The allegations of fraud in the reissuance of the stock are similar to those appearing in the case of *Brickey* v. *G. R. Brickey Merc. Co.*, 207 Ark. 989, 183 S. W. 2d 606, a corporation organized by appellant's father, as was the Brickey & Ayres Lumber & Gin Company. The allegations as to fraud may be disposed of by saying that no attempt was made to prove them and the undisputed testimony is to the effect that the reissuance of the stock was not procured by fraud. Indeed, in the amended complaint this allegation was abandoned, and relief was asked upon the ground only that the agreement was intended to be, and was in fact a mortgage given to secure the debt.

Appellant was president of both the Brickey Merc. Co., and the Brickey & Ayres Lumber & Gin Company, hereinafter referred to as the company, and the records of that company recite that appellant, as its president, called a meeting of its directors, who were its stockholders at which he announced that he had sold 88 shares of his stock to his mother and had also sold 25 shares, the balance of the stock he owned, to the company, thereby divesting himself of all his stock in the company. It is not questioned that this stock was canceled and reissued in exact conformity with the provisions and requirements of § 2150, *et seq.*, Pope's Digest, providing the manner in which corporate stock may be transferred and reissued. The stock was reissued July 3, 1933, the date of the agreement hereinabove copied.

Appellant had purchased a valuable farm of 606 acres, which is much more valuable now than it was then, but was unable to make the payments of purchase money due thereon. On February 3, 1927, he had borrowed $7,000 from his mother, and had given her a note for that sum. Mrs. Brickey, his mother, recovered judgment on this note January 9, 1933, and caused an execution to be issued on this judgment March 31, 1933,

which was levied on appellant's stock in the company. An arrangement was made whereby Mrs. Brickey released the levy on 25 shares of this stock for purposes presently to be stated.

Appellant induced the company to assume his contract to buy the land, but the debt was larger than the company was willing to assume, and it was agreed that the company would make appellant a loan of $2,700 to be applied on his debt for the purchase price of the land, and as security therefor he assigned the 25 shares of stock to the company, which his mother had released from the execution, and a contract for its repurchase was entered into. That contract is not set out in the record, but it is conceded to be substantially the same as the one made with his mother. It is conceded also that appellant did not exercise the option to repurchase the stock transferred to the company, and that he thereby lost the stock. Appellant testified that the company did not extend the time to repurchase the stock transferred to it, but that his mother did so agree.

At the time of the reissuance of the stock, the judgment against appellant with the interest thereon, amounted to $10,144.15 and the loan from the company, with interest, amounted to $2,860.54. Appellant placed the value of the gin owned by the company at from 20 to $25,000 and the value of other assets at from 5 to $7,000. There were 320 shares of stock outstanding, making the stock worth about $100 per share. Appellant received substantially more than this for his stock, both from his mother, and the company, and about the same from each, so that there cannot be said to have been an inadequacy of consideration.

Mrs. Brickey, who died September 12, 1941, had executed a last will and testament on July 16, 1927, which was duly probated after her death. By the provisions of this will she had devised her entire estate real and personal, to appellant's son, A. G. Brickey, Jr., her grandson, to the exclusion of appellant. When apprised of the provisions of the will, appellant remarked, with an oath,

that he would consult another attorney about the will, apparently indicating that he would contest its probate, but this he did not do.

Mrs. Brickey had reared this grandson, his mother having died in infancy. Appellant had remarried and had a child by this second marriage. He deeded to his second wife a farm which he inherited from his father, and he declined to answer whether he had executed a will in which he had excluded his son, A. G. Brickey, Jr., from sharing in his estate.

Whatever may have been the relation between appellant and his mother, the fact remains that he made no attempt to repurchase his stock from his mother in her lifetime, but he assigned as his reason, that his mother had assured him from time to time that she would allow him to redeem it at any time, but no writing to that effect was offered in evidence. This testimony was incompetent as appellant had made the executors, named in his mother's will, parties defendant, but the testimony appears to have been offered without objection. The only corroboration of this testimony was given by a Mrs. Frank Doss, who testified that she was at one time employed by Mrs. Brickey as a companion, and that in April, 1939, she heard the following conversation between appellant and his mother:

"Q. Tell what was said. A. Well, Mrs. Brickey told Mr. Arthur that she didn't intend to never take his property away from him—that she was going to let him have it and keep it as long as he wanted it. Q. Did you at that time know what property they were talking about? A. No, sir, I didn't. I sure didn't. Q. Was anything said to Mrs. Brickey about any debt he owed her? A. Yes, sir, he owed her a debt for something, and he had let her have, he had turned his part over to her to pay this debt, and she told him she never would take it

Opposed to this testimony was that of a colored woman named Tinney Robinson, who had been employed by, and lived with Mrs. Brickey for a period of 40 or 50

years beginning before the birth of appellant. Tinney testified that appellant asked her to intercede with his mother to let him have his stock back, and that she communicated this request to his mother. She testified: "A. He told me to ask his mother to give it back to him, and he said, tell her Arthur and Ethel, he would give them half each." It does not appear whether Ethel was a deceased child by the first marriage, or was a child by his second marriage, as only one child by his first marriage survived. Tinney testified that Mrs. Brickey replied, "No, Tinney, you know he wouldn't do it." And in that connection Mrs. Brickey said that "she wanted the little boy to have all she had because nobody would help him but her."

We make no attempt to reconcile this conflicting testimony for the reason that in our opinion the plea of laches must be sustained, if not also, the plea of the statute of limitations. The agreement hereinabove copied expressly provides that, if the debt due Mrs. Brickey was not paid by December 1, 1934, appellant should forfeit his right to repurchase the stock. By § 8943, Pope's Digest, it is provided that: "No verbal promise or acknowledgment shall be deemed sufficient evidence in any action founded on contract whereby to take any case out of the operation of this act, (the statute of limitations) or to deprive the party of the benefits thereof."

Here there is no contention that any consideration paid or furnished by appellant moved Mrs. Brickey to grant an extension of time within which the debt to her might be paid, nor is it contended that there was any writing evidencing the grant of an extension of time for payment. But if this plea were not upheld, the decree must nevertheless be affirmed for the reason that the plea of laches must be sustained.

It is not contended that appellant offered at any time to pay the debt due his mother, nor is it contended that it was ever forgiven. It is contended only that, without any consideration, save only love and affection, which may not have existed, Mrs. Brickey agreed that her

son should have all the time he needed or might require within which to pay his debt. The evidence which we do not recite, for the reason that we regard it as unimportant, is replete with suggestions that an estrangement existed. Appellant may have thought, until he heard his mother's will read, that as her sole and only heir he would inherit her property; but even then he did not act promptly, and threatened only to contest her will. The property of the company in which the owner of the stock would share, has greatly increased in value, due principally to the greatly enhanced value of the land which appellant induced the company to take over under a contract similar to the one herein copied, with his mother. No one would know better than Mrs. Brickey whether she had agreed to indefinitely extend appellant's right to purchase his stock, and he seeks by this suit to annul the provisions of his agreement with his mother, which imposed a definite limitation of time within which that right might be exercised, and Mrs. Brickey is now dead.

There can be, and is no question but that Mrs. Brickey intended that her grandson and not her son should take title to all her property, both real and personal. The will of Mrs. Brickey is the conclusive evidence of that fact, yet if appellant should now prevail and be allowed the right to redeem, the intent of this will would, in a large measure, be defeated, as appellant says in his brief that "this very tract of land acquired by the company has made the corporation very rich as of this date."

The case of *Stebbins* v. *Clendenin*, 136 Ark. 391, 206 S. W. 681, announced principles which we think are applicable and controlling here. There a warranty deed was executed to secure the payment of a note due June 2, 1904. This deed was in fact a mortgage, as it was intended only to secure the payment of the note. Suit was brought and judgment recovered on the note, and the judgment was satisfied and paid, and suit was brought to cancel the deed. It was there said: "The note matured on June 2, 1904. It was appellant's duty to pay

it at maturity. Appellant could not neglect this duty and thereby indefinitely extend his right to redeem the land. Such a holding would permit him to take advantage of his own wrong. His right to redeem the land, in so far as affected by limitation and laches, must be timed with his duty to pay the note. The bar by statutory limitations, as well as the bar by laches, began to run against appellant on June 2, 1904.''

The defenses of limitations and laches were not sustained in that case, however, for the reason that the mortgagee had in fact collected the debt for the security of which the deed, construed to be a mortgage, had been given. Otherwise, because of laches and limitations, the right to redeem would have been denied.

Here it is not contended the debt was ever paid, the contention being that indefinite and unlimited time had been given for its payment, but appellant's long inaction, until the property had greatly enhanced in value, and testimony has been lost which prevents the development of the truth in this regard, constitutes laches and the decree must be affirmed on that account, and it so ordered.