**GULF OIL. CORPORATION, Respondent,**

v.

**William H. FERGUSON and Helen Ferguson, Appellants.**

**No. 57645.**

Supreme Court of Missouri,
Division No. 1.

May 13, 1974.

**2**

William H. Ferrell, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for plaintiff-respondent Gulf Oil Corp.

Benson Cytron, House Springs, for defendants-appellants.

HIGGINS, Commissioner.

Action for specific performance of option to purchase real estate. (Appeal taken prior to January 1, 1972.)

Defendants leased subject property to Missouri State Oil Company for a term of twenty years from May 1, 1950, to April 30, 1970, for a rental of one cent per gallon, seventy-five dollars per month minimum, with a provision that "Lessee shall also have the option of purchasing the demised premises at any time during the term of this lease or any extended term hereof for the sum of $25,000.00." The interest of Missouri State was assigned to plaintiff.

On March 30, 1970, plaintiff mailed two letters and sent a telegram to defendants at addresses in Arnold, Missouri. The telegram was of the same substance as the letters which were identical: "You are hereby notified that Gulf Oil Corporation elects and does hereby exercise its option to purchase for the sum of Twenty-five Thousand and No/100 ($25,000.00) Dollars that certain property located at 7209 Lansdowne, City of St. Louis, Missouri, and more particularly described in a certain Lease Agreement dated May 1, 1950 and recorded in Book 6934, Page 583 of the Records of the City of St. Louis, Missouri."

On March 31, 1970, plaintiff requested Missouri Title Guaranty Company to examine the title to subject property. Missouri Title issued its title insurance binder to Gulf April 1, 1970. The binder showed a deed of trust executed by defendants December 13, 1968, on subject and other property to secure a loan of $82,500 made by Bohemian Savings and Loan Association.

On April 6, 1970, Gulf also ordered a survey of the property which it received April 16, 1970. Gulf also prepared and delivered a warranty deed to the title company to be used for conveyance of the property from defendants to plaintiff. On April 29, 1970, Gulf delivered its check for $25,000 to the title company and requested that the title company notify defendants that the deed and money were on deposit for completion of the transaction.

Missouri Title Guaranty Company, by letter dated and postmarked April 29, 1970, notified defendants: " * * * we are in receipt of funds from Gulf Oil Corporation relative to the purchase of subject property and we have been instructed to act as escrow agent and proceed to close the transaction in accordance with the notice mailed to you dated March 30, 1970 (copy enclosed).

"Please contact the undersigned immediately to arrange for closing."

Mr. Ferguson admitted receipt of the two letters and telegram of Gulf dated March 30, 1970, on or about March 31, 1970. He also admitted receipt of the letter of Missouri Title of April 29, 1970, from his rural mailbox May 1, 1970. He felt this date of receipt was correct since he promptly called his attorney. He did not believe the letter had been left in his box the previous day, April 30, 1970, since he had a habit of looking in his mailbox every day except Sunday. April 30, 1970, was a Thursday. In any event, neither defendants nor their attorney made any effort to contact plaintiff, their mortgagee, or the title company with respect to completing the sale.

Russell Brown, real estate representative for Gulf in the St. Louis area, first received notice of Gulf's intention to pur-

chase the property when he received copies of the March 30, 1970, letters from his employer to Mr. and Mrs. Ferguson. He had recommended exercise of the option because the lease "was terminating." He received the title binder and survey on behalf of Gulf and forwarded them to Gulf's regional office in Tulsa, Oklahoma, so that they could be checked by the engineering and legal departments. Under normal procedures these requirements had to be met before a draft or check could be issued for the purchase price.

Earle LaBoube was secretary of Bohemian Savings and Loan. As of trial, May 26, 1971, $22,000 of the $82,500 loan to defendants had been paid, leaving a balance of $60,500. The deed of trust covered a number of parcels of real estate in addition to the subject property which had been appraised at $27,500. Defendants had not moved to release subject property from the deed of trust.

Defendant William H. Ferguson confirmed the status and amounts of the deed of trust, and that no attempt had been made to release subject property from the deed of trust. He had not prepared a warranty deed to convey the property and he had made no contact with anyone relative to such a conveyance.

The title company held the $25,000 purchase price in escrow from April 29, 1970, and invested it in interest-bearing certificates of deposit beginning July, 1970.

Defendants refused to convey, and this suit ensued.

The court made the following pertinent findings and conclusions:

"As of the date of the hearing of this case, the property * * *, along with other parcels of real property owned by defendants, was subject to a deed of trust in favor of Bohemian Savings & Loan Association on which a balance of $60,500 was due.

*     *     *     *     *     *

"On or about March 30, 1970, plaintiff Gulf Oil Corporation exercised the option [to purchase].

"On April 29, 1970, plaintiff deposited the $25,000 purchase price with Missouri Title Guaranty Company to be held in escrow pending a close of the sale. On said date the Title Company wrote defendants advising them of such deposit and requesting them to contact it to arrange for a closing.

"Any obligation plaintiff Gulf Oil Corporation may have had to make any other tender of the purchase price before May 1, 1970, was waived and rendered nugatory by the failure of defendants to tender a deed to said property and to remove the mortgage lien therefrom before said date.

"The exercise of the option referred to above resulted in a valid and binding contract for the sale by defendants of the property described above to plaintiff, free and clear of any mortgage lien.

"Since April 29, 1970, the $25,000 purchase price of said property has been held in escrow by Missouri Title Guaranty Company. Pursuant to the consent of the parties, that company has invested said $25,000 in interest-bearing certificates of deposit.

"Since a date prior to May 1, 1970, plaintiff Gulf Oil Corporation has been in possession of said property.

"As of the date of this decree defendants are legally obligated to convey said real property to plaintiff by general warranty deed free of any mortgage lien."

By its judgment and decree the court ordered that defendants shall:

"(a) effect a release of the mortgage lien from the real property hereinabove described, and

"(b) convey such property to plaintiff by general warranty deed.

"(2) In effectuating such release of the mortgage lien, defendants are authorized

to utilize all, or any part, of the $25,000 purchase price and accrued interest as may be necessary for that purpose.

"(3) Defendants shall be paid the balance of said purchase price and accrued interest after any payment therefrom as provided in paragraph (2) above.

"This Court shall retain jurisdiction of this case for the purpose of entering any further order, after hearing, that might be required to effectuate a transfer of title from defendants to plaintiff as hereinabove set forth."

Appellants contend the court erred in its order of specific performance in that (I) plaintiff failed to prove a tender of performance prior to filing its suit, (II) plaintiff failed to accept the offer in the option prior to its expiration, and (IV) in requiring defendants to effect a release of the mortgage lien when it was not shown they had the power to do so. They contend also that the court erred (III) in finding that defendants had waived the right to tender in accordance with the contract in that there was no evidence to support such a finding.

Appellants' position is that plaintiff was obligated to tender the purchase price in order to seek specific performance; that the option was unilateral with a definite time period stated, time was therefore of the essence and, accordingly, plaintiff had to accept the option by payment of the purchase price on or before April 30, 1970; that defendants did not waive the tender; that there was no evidence to show that defendants could secure release of the mortgage.

Respondent's position is that the two letters and telegrams of March 30, 1970, exercised the option and resulted in creation of a bilateral contract for purchase of subject property; that time was not of the essence; that if tender of the purchase price was a requirement, it was waived by defendants' failure to tender a warranty deed and to release the deed of trust; that

to hold plaintiff to the one-day difference in tender, if so, would result in a forfeiture which no court would permit; that the court could properly order defendants to accomplish release of the mortgage.

The principal question thus posed is whether, in these circumstances, the option should be interpreted as requiring an unconditional acceptance within the option period for its exercise, or payment of the purchase price within the option period.

Two well-known authorities have addressed this question:

"Each such agreement must be scrutinized to see what it requires to be done within the specified time, either expressly or by necessary implication. Does it require completed performance, that is, actual payment, or does it require tender of the agreed price? Generally, there is contemplated only a notice of acceptance of, and a readiness and willingness to perform, the irrevocable offer which is an option." Williston on Contracts (3rd ed.), Vol. 6, § 887BB, pp. 529–531.

" * * * in specifying the mode of acceptance and the condition of his duty, the option giver can cause the contract either to remain unilateral as before the acceptance or to become bilateral. The specified condition can be either the actual rendition of a definite performance (such as payment of the price) or the making of a promise of such performance. The difference that it makes is this: first, it determines the manner in which the option holder must accept—the character and limits of his power; secondly, it answers the question whether the option giver can maintain any action, for either damages or specific performance, against the option holder. In most cases, the courts are likely to interpret the agreement in such a way that the contract will be held to be bilateral after a proper notice of acceptance. In such cases the notice of acceptance is operative without any tender of the price * * *." Corbin on Contracts, Vol. IA, § 264, p. 514.

There is no question that plaintiff wrote two letters and sent a telegram to defendants which were received by defendants March 31, 1970. They express an unconditional exercise of the option to purchase contained in the lease, and the date of receipt was well within the option period.

■ Viewed as suggested by Williston and Corbin, supra, the letters and telegram constituted an exercise of the option which created a bilateral contract for the sale of the property within a reasonable time and in accordance with the usual conditions impliedly attached to real estate sales, e. g., title search, a showing of marketable title, and tender of an executed warranty deed contemporaneously with tender of the purchase price.

This demonstration and its underlying principles find approval in Lusco v. Tavitian, 296 S.W.2d 14, 16 (Mo.1956): "If there be no stipulation as to the mode, manner or way the optionee should give notice of acceptance, any manifestation of the determination to accept will suffice, with resultant contract of purchase and sale." See also 55 Am.Jur., Vendor and Purchaser, § 28, p. 495; § 41, pp. 511–512.

There is nothing in the option in question which expresses or implies that its exercise requires payment of the purchase price. It is remarkably similar to the option in Kottler v. Martin, 241 N.C. 369, 85 S.E.2d 314 (1955), which provided that the optionee "may at any time during the term of this lease elect to purchase said property at the sum of $6,700.00." The optionee gave notice of exercise of the option without tender of the purchase price, and the court held that payment or tender of the purchase price was not requisite until good and sufficient deed for the property was tendered by optionor to optionee. Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47 (1938), and Baker v. Coleman, 160 Fla. 297, 34 So.2d 538 (banc. 1948), cited by appellants, are distinguished in that they involved sale of stock rather than real estate, with no question of title perfection, and the Florida case contained no binding option because the offer was without consideration. Kyner v. Bryant, 353 Mo. 1212, 187 S.W.2d 202 (1945), recognized the rule that when time is of the essence of the contract, and a purchaser desires to invoke specific performance, he must pay or offer to pay the purchase money on the date or within the time stipulated. However, in affirming a decree of specific performance, the court also recognized "the time for the performance of the contract was intended to be the time it was determined defendant had a 'merchantable fee simple title,' such time being fixed, by the facts of the case * * *." 187 S.W.2d 1.c. 206. Edwards v. Sittner, 213 S.W.2d 652 (Mo.App.1948), is too remote on its facts to warrant discussion.

■ Since, as demonstrated, this option and its exercise created a bilateral contract for purchase and sale of subject real estate, time, i. e., completion of the sale prior to May 1, 1970, was not of the essence. This proposition is well stated in 55 Am. Jur., Vendor and Purchaser, Section 110, p. 587: "Where an irrevocable option to purchase was given, under which the purchaser was required to exercise his option within a stated time, and a time was also fixed for completing the purchase after the exercise of the option, it was held that while time was of the essence of the contract as regards the exercise of the option, it was otherwise as to the contract of purchase which arose on its exercise." See also 55 Am.Jur., Vendor and Purchaser, § 112, p. 588, and Branch v. Lee, 159 S.W.2d 677, 679–680 (Mo.1942); and note that " 'Where time of performance is not made the essence of the contract an ambiguity in that respect will not defeat specific performance. In such cases, it is implied that performance may be required within a reasonable time.' " Wilkinson v. Vaughn, 419 S.W.2d 1, 5 [4] (Mo.1967).

With the case in this posture, it is not necessary to discuss whether a tender in fact or in equity was accomplished by the letter of April 29, 1970, from Missouri

Guaranty Title Company to defendants, or whether defendants waived tender by their failure to tender a warranty deed to subject property and release of the deed of trust. For authorities finding waiver of tender of the purchase price in these circumstances, see e. g., Lusco v. Tavitian, supra; Cooper v. Mayer, 312 S.W.2d 127 (Mo.1958); Branch v. Lee, supra; Kyner v. Bryant, supra; Corbin on Contracts, Vol. 1A, § 264, p. 512; and note that to deny relief to plaintiff for tendering performance one day late, if so, would work an unconscionable forfeiture. Haeffner v. A. P. Green Fire Brick Co., 76 S.W.2d 122, 126 [2, 3] (Mo.1934).

■ With respect to appellants' last contention (IV), it is true that specific performance cannot be decreed of a defendant who does not have title to the property to be conveyed or the means of compelling a conveyance of title, i. e., where performance is impossible, the remedy will be denied. See H. B. Deal & Co. v. Kuhlmann, 244 S.W.2d 390 (Mo.App. 1951), where the court properly held that an equity court should not grant a decree purporting to affect rights of persons not parties to the suit.

■ This authority is not applicable to this case. Requiring that defendants secure release of the deed of trust held by Bohemian Savings and Loan Association cannot affect that party adversely. All it is ever entitled to receive is the payment decreed; and the court simply required defendants, as sellers, to pay the mortgage to effect its release and convey subject property by general warranty deed. The decree permitted the use of the escrowed money to that end, and there is no pleading or evidence that they did not have title or that they were unable to perform this part of the decree for want of funds. It has been stated that "If the incumbrance could be removed by a money payment, the defendant became bound to make it." Dennett v. Norwood Housing Ass'n, 241 Mass. 516, 135 N.E. 866, 867 [6] (1922). See

also Oberg v. Burke, 345 Mass. 596, 188 N.E.2d 566 (1963); Regan v. Berent, 392 Ill. 376, 64 N.E.2d 483 (1946).

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

BARDGETT, P. J., and HENLEY and MORGAN, JJ., concur.

HOLMAN and SEILER, JJ., not sitting.