**Antoinette M. FREY, Plaintiff-Respondent,**

**v.**

**Milton S. YUST, Defendant-Appellant.**

**No. 35542.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 19, 1974.

W. W. Sleater, St. Louis, for defendant-appellant.

Ziercher, Tzinberg, Human & Michenfelder, George J. Bude, Clayton, for plaintiff-respondent.

WEIER, Judge.

Plaintiff Antoinette M. Frey filed suit for specific performance of a contract to convey real estate. Defendant Milton S. Yust denied plaintiff's allegations, and raised three counterclaims: (1) for rent due; (2) in the alternative, damages for holding over; and (3) damages for slander of title. The trial court ordered specific performance, denied relief on all of the counterclaims, and defendant appealed.

We review the facts. Defendant is the owner of certain real estate in St. Louis County, described as Lot 164 of Lynn Meadows Plat No. 3, according to the plat recorded in Plat Book 68, pages 40 and 41 of the St. Louis County Records. The street address of the premises in question is No. 1 Montclair Court, Florissant, Missouri. On September 1, 1965, defendant and his then wife, Mary P. Yust, as lessors, entered into a 5-year lease agreement with plaintiff, as lessee, for these premises. This lease included a purchase option

which could be exercised by lessee at any time prior to the expiration date of the lease.[1]

In July, 1970 plaintiff went to Community Federal Savings and Loan Association to secure a twelve thousand dollar ($12,000.00) loan to purchase the leased premises. A loan commitment for the entire amount sought was approved on August 5, 1970. But the loan commitment charged two points to the seller who here is defendant. There had been no agreement between the parties that defendant pay the two points.

In an attempt to exercise the purchase option, plaintiff, through her attorney, sent defendant a letter, dated August 17, 1970, which stated in part: "This letter is to serve as notice to you of our client's desire to execute said option at the expiration of the lease term, September 1, 1970." Defendant received this letter but did not reply to it. A "notice to terminate tenancy", either delivered to plaintiff at her place of employment by defendant or received by her in the mail on September 24, 1970 from defendant, consisted of the next communication between the parties. By letter dated October 7, 1970, plaintiff, again through her attorney, responded that she was ignoring the notice to vacate, and further alleged that she was ready and able to perform her obligations under the option contract, and threatened legal action if defendant refused to comply. However, this letter was never received by defendant, and was returned to plaintiff's attorney marked "unclaimed". No further communication passed between these parties until this lawsuit was instituted in May, 1972.

After August 31, 1970 (the lease expiration date) plaintiff continued to occupy the premises, making monthly rental payments of $100.00 by check payable to Mary Patricia Yust and Milton Yust. The checks were delivered to Mrs. Yust. Plaintiff continued to reside on the premises until the end of May, 1972. She made no rental payments for April or May of 1972, and vacated the premises without giving notice to defendant.

Defendant has raised several assignments of error on appeal, claiming, among other things, that plaintiff did not tender the option purchase price and that she did not properly exercise the option contract. He has also challenged the trial court's denial of his three counterclaims.

■■■ It is undisputed that the lease agreement contained an option contract to purchase, which plaintiff could exercise at any time before the termination of the written lease agreement. An option is a privilege, a right of election to exercise a privilege. As such, an option constitutes a continuing offer on the part of the vendor or owner until accepted within the time and on the terms limited in the option. When accepted, a valid agreement arises supported by mutual promises. Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47, 53[1] (1938); Lively v. Tabor, 341 Mo. 352, 107 S.W.2d 62, 66[4] (1937). Stated more specifically, when the offer is seasonably accepted, a new bilateral contract arises, and it is this contract which is specifically enforceable. Suhre v. Busch, *supra*, 120 S.W.2d at 53[1]; Starr v. Crenshaw, 279 Mo. 344, 213 S.W. 811, 813[1] (1919).

■■■ It is also fundamental that acceptance of the option must be in accordance with the terms of the option and cannot be made in some manner contrary to

---

1. The pertinent part of the option provision was: "Lessee is hereby given the option to purchase the leased premises at any time prior to the expiration of the term hereinabove provided, for the sum of $13,500, provided that lessee is current in the performance of all obligations undertaken by her hereinabove; * * *. In the event lessee exercises said option to purchase at the expiration of the term hereinabove provided, then and in that event, lessors agree to apply against the purchase price of $13,500, the full $1,500 initially paid by third party notwithstanding that said deposit has then been fully depleted by application to lessee's monthly rentals."

the method provided. Suhre v. Busch, *supra* 120 S.W.2d at 54[2–5]. However, if, as in the case under consideration, there is no stipulation as to the mode, manner, or way the optionee should give notice of acceptance, any manifestation of the determination to accept will suffice, with a resultant contract of purchase and sale. Lusco v. Tavitian, 296 S.W.2d 14, 16[4] (Mo. 1956). When, as here, an option contract to purchase involves real estate, the exercise of that option creates an enforceable bilateral contract, and time is not ordinarily of the essence; i. e., completion of the sale prior to the termination of the option date is not required. Gulf Oil Corporation v. Ferguson, 509 S.W.2d 1, 5[2] (Mo. 1974). Nothing in the terms of the option contract under consideration expressly or impliedly required payment of the purchase price as a condition to its complete exercise. Real estate option contracts similar to the one at issue have been interpreted as containing no requirement of purchase price payment to effectuate a valid option exercise. Such payment may be made within a reasonable time. See Gulf Oil Corporation v. Ferguson, *supra* at 2, 5[1].

■ However, while plaintiff in the instant case was not required to complete the sale in order to exercise the option, nonetheless she was required to manifest an acceptance of this option privilege within the time specified; i. e., prior to September 1, 1970. It is fundamental contract law that acceptance of an offer must be unequivocal and certain. Keith v. Tucker, 483 S.W.2d 430, 435[7] (Mo.App.1972); Brown v. Childers, 254 S.W.2d 275, 280[2] (Mo.App.1953). Since an option, as described above, is but a continuing offer, it must be accepted in the same manner as any offer in order to create an enforceable contract.

■ We turn again to the language of plaintiff's letter of August 17, 1970, which allegedly constituted an exercise of the purchase option. This correspondence contained the following: "This letter is to serve as notice to you of our client's desire to execute said option at the expiration of the lease term, September 1, 1970." Plaintiff contends that these words comprise a valid exercise of her purchase option. She asserts that similar language in Cummins v. Dixon, 265 S.W.2d 386 (Mo.1954) was held to be a proper option acceptance. However, in that case, vendees exercised *their option with these words:* " 'We hereby elect to purchase the demised premises for Forty-five Thousand ($45,000.00) Dollars in accordance with all the terms and conditions of the said lease.' " Cummins v. Dixon, *supra* at 395. We do not doubt that such language would constitute a sufficient exercise of an option contract. But at the same time we do not find plaintiff's August 17th letter "similar" to that in the *Cummins* case. In another case, the Missouri Supreme Court decided that the following notice properly accepted a purchase option: "You are hereby notified that Gulf Oil Corporation elects and does hereby exercise its option to purchase for the sum of Twenty-five Thousand and No/100 ($25,000.00) Dollars * * *." Gulf Oil Corporation v. Ferguson, *supra* 509 S.W.2d at 2. This would indeed suffice as a present, unequivocal acceptance of an offer, but once again plaintiff's alleged acceptance terminology is readily distinguishable.

In this case, defendant could not know, based solely on the August 17th letter, whether plaintiff elected to exercise the option as of September 1, 1970, or whether she merely had a "desire", as expressed in the letter, at that time to execute the option later. As such, this letter becomes an uncertain and ambiguous notice, and is therefore not a proper acceptance. Plaintiff points out that defendant did not respond to her letter, and this should significantly affect the situation. Yet, it is difficult to determine why defendant should have responded. Plaintiff's letter contains no request nor expectation of any response. Plaintiff also asserts that, because she had a loan commitment for the purchase price, she was "ready, willing, and able" to ten-

der the purchase price as of September 1, 1970, and this should be given consideration. Yet this fact was not brought to defendant's attention by the August 17th letter, and, in addition, plaintiff had made no tender as of September 1, 1970. In fact, although she had time, plaintiff did nothing further concerning the option contract before the termination date. It was not until October 7, 1970 that plaintiff again acted by sending the letter described above, which was returned "unclaimed". From these circumstances, we do not find it unreasonable that defendant could have inferred that as of September 1, 1970, plaintiff had decided against her "desire to execute" the option as expressed in her August 17th letter, and that the option had then lapsed. Therefore, based on these facts, we are unable to find a sufficient acceptance of the option by plaintiff so as to create a binding, enforceable contract for the sale of the real estate in question. Accordingly, no contract existed which could be specifically enforced, and the judgment below ordering specific enforcement must be reversed.

Defendant has also contended that the trial court erred by failing to grant relief on the counterclaims he had asserted. As noted previously, defendant had filed three counterclaims: (1) for rent due; (2) damages for holding over; and (3) damages for slander of title. Plaintiff did continue to reside at the leased premises after the expiration of the written lease agreement on August 31, 1970, until the end of May, 1972. During this period, she paid a monthly rent of $100.00 by check payable to Mary Patricia Yust and Milton Yust, but the written lease called for a monthly rental of $125.00. These rental checks were delivered to Mrs. Yust throughout this time and yet between these dates the Yusts were, divorced on some date not in evidence. Plaintiff paid no rent for the months of April or May, 1972, and vacated the premises without notice. The written lease agreement had provided for double rent in the event the tenant held over. This is the extent of the evidence. In that state, the record contains insufficient information concerning the title to the real estate and the circumstances and the relationship between plaintiff and defendant, and between defendant and Mrs. Yust, from September, 1970 until May, 1972. This being the case, we do not at this time reach the merits of the first two counterclaims. At the same time, we decide nothing as to the merits of the third counterclaim (slander of title). The decree ordering specific performance precluded any consideration of this claim by the trial court. The taking of additional evidence will be necessary in order to develop a more complete record, and to afford the court below an opportunity to determine the facts.

Accordingly, the judgment for plaintiff on plaintiff's petition is reversed. The judgment as to the counterclaims is reversed and remanded for further proceedings consistent with our ruling herein.

DOWD, C. J., and RENDLEN, J., concur.

CLEMENS, J., dubitante.