The FIRST NATIONAL BANK OF KANSAS CITY, Trustee, Plaintiff,

v.

Frances Suzanne Duke WHEELER, Defendant-Respondent,

and

The Unknown and Unborn Issue of Frances Suzanne Duke Wheeler, William Richard Scott, Suzanne Frances Scott, the Unknown and Unborn Issue of Frances Suzanne Duke Wheeler other than children, Defendants-Appellants.

No. KCD 28589.

Missouri Court of Appeals, Kansas City District.

Aug. 29, 1977.

Rehearing Denied Nov. 7, 1977.

David M. Claycomb, James, Odegard & Millert, Jesse L. Childers, Kansas City, for defendants-appellants.

William L. Turner, Eugene C. Hall, Michael J. Gallagher, Gage & Tucker, Kansas City, for defendant-respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Action by First National Bank for declaratory judgment determining, *inter alia*, whether an instrument, purporting to be a trust indenture purportedly executed by defendant Frances Suzanne Duke Scott (Wheeler) created a trust with plaintiff as trustee of her interest, as remainderman, in the assets of H. B. Duke testamentary trust. Appeal from summary judgment which declared that such purported trust failed, and ordered that the assets of the H. B. Duke trust attributable to defendant Wheeler be paid to her outright, free and clear of trusts, subject to attorneys' fees and expenses, for the period ending Sep-

tember 30, 1975, and as may be allowed for further services. The dispositive question is whether the purported trust failed for want of acceptance by the trustee. Affirmed.

H. B. Duke died in 1935. His will appointed the First National Bank of Kansas City trustee of a testamentary trust which provided a life estate to Frances T. Duke, his daughter-in-law and mother of Frances Suzanne Duke Wheeler, and that at the death of Frances T. Duke the corpus was to be distributed to the grandchildren of H. B. Duke, Frances Suzanne Duke (Wheeler), and her brother, Henry Basil Duke.

Frances T. Duke died in November, 1974, and Frances Suzanne Duke Wheeler, as one of the two grandchildren of H. B. Duke, became entitled under the will of H. B. Duke to receive one half of the trust corpus in possession of his trustee, the First National Bank.

On July 31, 1959, Frances Suzanne Duke Wheeler, then Frances Suzanne Scott, signed a 7-page document entitled "Trust Indenture," which recited it was made "by and between" herself as settlor and the First National Bank as trustee. After further recitals that she was a remainderman in two separate trusts established by her grandfather, H. B. Duke, and that she desired "to establish an irrevocable trust to consist of any and all property which she may become entitled to receive upon the termination" of those trusts, the instrument provided in part:

"NOW, THEREFORE, in consideration of the premises, of the acceptance of this trust by the Trustee and of the promise of the Trustee to hold the trust estate and perform the duties of the Trustee hereinafter set forth, the settlor does hereby transfer * * * all property which she may become entitled to receive upon the termination of the trust * * of her grandfather * * * ."

The subscribing signature of Frances Suzanne Scott as settlor appears in the space so provided at the end of the document. No signature appears in the space similarly provided for the subscribed signature of the

trustee; and the First National Bank has never caused the "Trust Indenture" to be signed by it as trustee.

On August 7, 1959, Mrs. Scott's attorney transmitted a copy of the "Trust Indenture" to the First National Bank by letter to C. H. Jones, its trust officer, with directions to "Please have enclosed Trust Agreement executed by one of your officers, sending one copy to Mrs. Scott and an unsigned copy to me." When the "Trust Indenture" arrived in the bank, its trust department concluded that the instruments would be placed on file and would be retained unexecuted by the bank until termination of the H. B. Duke trust at which time the bank anticipated trust assets would be available and a decision would be made on accepting the trust. This was confirmed by letter to Mrs. Scott's attorney August 10, 1959. The bank's trust officers felt that Mrs. Scott should be consulted upon termination of her grandfather's trust and "asked to approve the [her] establishment of the trust." The bank took the position it would retain the "Trust Indenture" until such time as Mrs. Duke died, which would make it necessary to make a decision about the instrument "as to whether it would be acceptable." The purpose for holding the instrument unexecuted by the bank was "lack of assets and a feeling that should assets be received * * *, arrangements would have to be made to make sure that the persons involved [Mrs. Scott] would be agreeable to setting up the trust and administering it * * *." It was the bank's intention to accept the trust upon conditions that: the H. B. Duke trust be terminated at which time funding would be available; Mrs. Scott reaffirm and agree to setting up a trust; Mrs. Scott agree and sign a receipt for assets to transfer from the H. B. Duke trust to the trust that would have been set up under the July 31, 1959, document.

On January 26, 1961, Mrs. Scott was declared incompetent by the Probate Court of Johnson County, Kansas, and a guardian of her person and estate was appointed. On July 19, 1961, the guardian sought and obtained an order of the probate court directing the guardian "to withdraw, revoke, and cancel" the "Trust Indenture" of July 31, 1959; and on the same date, the guardian notified the First National Bank that he, on behalf of the incompetent, was withdrawing, revoking, and cancelling the instrument.

On May 8, 1962, the probate court restored Mrs. Scott to full capacity and dissolved the guardianship.

On December 8, 1974, following termination of the H. B. Duke trust, Mrs. Wheeler executed and delivered to the bank an affidavit in which, among other things, she asserted the "Trust Indenture" is "a nullity because not acted upon or signed by the First National Bank * * * as trustee."

The bank holds approximately $500,000 in securities as Mrs. Wheeler's share in the assets of the now terminated H. B. Duke trust. Such funds have never been delivered to a trust account nor administered upon under the "Trust Indenture" of July 31, 1959.

Appellants' position is that while acceptance of a trust by a trustee is necessary to bind the trustee, it is unnecessary to creation of a valid trust binding upon the settlor. See 89 C.J.S. Trusts § 60, p. 831. They assert that acceptance by the First National Bank was unnecessary to bind Mrs. Wheeler as she was bound by her execution of the "Trust Indenture" even had the bank immediately disclaimed the trust and refused the trusteeship, I Scott on Trusts, § 35, p. 287 (1967); that Mrs. Wheeler unilaterally and without aid of a trustee accomplished an effective and irrevocable transfer in trust of her property, Bogert, Trusts and Trustees, § 150, p. 62 (1965); that in such cases acceptance is presumed or is unnecessary, II Scott on Trusts, § 137, p. 1086 (1967); and where the trustee fails or refuses to act, the trust remains valid and the court appoints or substitutes a trustee, In re Soulard's Estate, 141 Mo. 642, 43 S.W. 617 (1897); §§ 456.190–456.200, RSMo 1969.

There is no quarrel with the foregoing general principles on the question of acceptance by a trustee as an incident of estab-

lishment of a valid unilateral *inter vivos* trust. The difficulty in appellants' position, however, is that what a settlor may do unilaterally has no bearing on what Mrs. Wheeler did in this case.

The language previously quoted from the "Trust Indenture" demonstrates a bilateral agreement to establish a trust as opposed to a unilateral and unconditional declaration of trust coupled with an unconditional transfer of property in trust. The language demonstrates an offer by Mrs. Wheeler to establish a trust and transfer property to the bank as trustee in exchange for the bank's "acceptance" and "promise * * * to hold the trust estate and perform the duties" prescribed. The document and the trust remain unaccepted by the trustee and the promises required of the trustee have never issued. While such executory circumstances prevailed, Mrs. Wheeler withdrew, revoked and cancelled the document.

Whether purported to be created by will, deed or contract, construction of the instrument requires the court to determine the intention of the settlor where the creation of the trust is a unilateral matter, and to determine the intention of the parties, where such creation is a bilateral matter. 76 Am.Jur.2d Trusts, § 17, p. 264. Where a bilateral contract is employed, an unequivocal and certain acceptance of an offer is necessary to make the contract binding. Restatement of Contracts, § 58, p. 65 (1932); *Frey v. Yust*, 516 S.W.2d 321 (Mo. App.1974).

As in the case of any other kind of contract, a bilateral agreement to create a trust is enforceable against the offering settlor, Mrs. Wheeler, only when accepted by the other party to the contract, the bank. See I Scott on Trusts, § 35.1, p. 288 (1967):

" * * * the failure of the trustee to accept may prevent the creation of the trust where the trust instrument expressly so provides, or where, as is ordinarily the case, the settlor did not intend the trust to become effective prior to its acceptance by the trustee."

See also *Denny v. Guarantee Title & Trust Co.*, 118 Kan. 286, 234 P. 966, 967 (1925), where a contract to create a trust was unenforceable against the settlor which provided, "This contract shall not be binding * * * until the trust herein created is accepted by the trustees * * * herein named * * * "; and *In re Rivas' Trust*, Sup., 100 N.Y.S.2d 357 (1950), where an *inter vivos* trust agreement was not enforceable against the settlor until satisfaction of a provision that the settlor's execution was " 'in further consideration of the acceptance by my Trustees herein named of the trust hereinafter established.' * * * the only logical conclusion * * * is that the trust instrument became effective upon the acceptance of the trust by the trustees, and the transfer to them as trustees of the securities * * *. They had no power to deal with the securities as trustees prior to that time. * * * Had she [settlor] died, certainly, the trust agreement would not have been effective. Further, she could have revoked the trust at any time prior to its acceptance." 100 N.Y.S.2d l. c. 360. See also *National Motor Club of Missouri, Inc. v. Noe*, 475 S.W.2d 16 (Mo.1972), where a bilateral or multiparty contract prepared for signature by each party to be bound requires the signature of such party in order to be enforceable.

The document in question is "by and between" the settlor and trustee, and the settlor's offer and promises are given "in consideration of" acceptance and promises of the trustee. The intent of Mrs. Wheeler to secure acceptance and mutual promises from the bank as a condition to creation of the trust is clear. Acceptance of the trust by the bank was express in Mrs. Wheeler's bargain; and failure of such acceptance prior to her withdrawal and revocation was fatal to the proposed trust.

Judgment affirmed.

All concur.